In re Local 1201, AFSCME, Rutland Department of
Public Works

[469 A.2d 1176]

No. 82-379

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed November 1, 1983

*Robert Reis* and *Alan P. Biederman* of *Biederman, Rakow &
Medor, P.C.,* Rutland, for Plaintiff-Appellant.

*William J. Bloomer,* City Attorney, Rutland, for Defendant-
Appellee.

Underwood, J. Local 1201, AFSCME (hereinafter referred to as Union) is the exclusive bargaining agent for employees of the City of Rutland's Department of Public Works. 21 V.S.A. § 1722(3). As such it petitioned the Vermont Labor Relations Board (VLRB) to add the position of dispatcher to the Department of Public Works (DPW) bargaining unit. The City opposed the inclusion of the dispatcher in that bargaining unit on the ground that the dispatcher is a confidential employee as that term is defined under 21 V.S.A. § 1722(6).

The VLRB, after hearing evidence presented by both sides, dismissed the Union's petition, concluding that the position of dispatcher in the DPW is that of a confidential employee, as defined in 21 V.S.A. § 1722(6). The Union appeals from this decision pursuant to 3 V.S.A. § 1003. The single issue presented to us for review is whether the VLRB erred in classifying the dispatcher in the DPW as a confidential employee under 21 V.S.A. § 1722(6).

The basic facts are not substantially in contention, and neither party objected to the findings of the VLRB. The Union insists, however, that the conclusions reached by the VLRB are unsupported by its findings and, therefore, clearly erroneous as a matter of law. Taking the evidence in the light most favorable to the appellee, City of Rutland, discloses that the position of dispatcher existed with the DPW for seven years and until February 11, 1982, was always represented by the Union. At no time did the City petition to remove that job from the Union on the grounds that it was a confidential position. Prior to February 11, 1982, the Public Works dispatcher's position was included within the Clerical and Technical Employees Unit of the Union. By agreement between the Union and the City that entire unit was decertified on February 11, 1982. Thereafter the Union petitioned to include the decertified dispatcher's position within the DPW unit. For the first time the City objected to it being classified as a Union position on the grounds that the position is confidential.

As nearly as can be determined from the record, the job classification has not materially changed since its inception seven years ago. Only two people have held the position of DPW dispatcher: the first for five years and the present one for two years. The dispatcher works under the direct supervision of the assistant superintendent. The assistant superintendent di-

rects the work of the Street Department and he, in turn, is accountable directly to the Commissioner of Public Works.

The dispatcher shares office space with the assistant superintendent in an office located at the DPW's garage. This office is physically separated from the garage, but it has a door, generally left open, that permits access to and from the garage. A memo to all employees stated: "The office at the garage will be for management only. There is a sign on the door and it means what it says. The only time employees can be in the office is if they have a good reason to be there." The Commissioner of Public Works has an office in City Hall, about one-half mile from the assistant superintendent's office at the garage. The dispatcher shares a common telephone line to which he and the assistant superintendent each have an extension. He has a key to his supervisor's file which contains confidential matters such as written communications between the Commissioner and the assistant superintendent concerning union-related matters. However, there is no finding of any confidential relationship between the dispatcher and the assistant superintendent or that the dispatcher needs access to the confidential file in order to carry out any of his duties.

The dispatcher's duties include maintaining radio contact with work crews, answering the telephone and relaying messages and complaints, maintaining a communications log, as well as keeping time sheets on employees, and records on mileage of vehicles, fuel consumed, repairs to equipment, etc. The dispatcher keeps his own record of each employee's work time and vacation time as well as his unproductive time and must notify the assistant superintendent if any time sheet submitted by an employee does not reconcile with the dispatcher's records. He has no authority, however, to discipline any employee or even to recommend disciplinary action. He exercises no discretion. Rather he routinely turns over his daily records and reports to his supervisor. Even his supervisor, the assistant superintendent, is powerless to discipline an employee should there be a discrepancy in his time sheet and the one maintained by the dispatcher. There is no finding either that one of the duties of the assistant superintendent is to recommend disciplinary action to his superior, the Commissioner of Public Works. Only the Commissioner has the power to discipline.

The assistant superintendent and the Commissioner do discuss confidential labor relation matters, but these discussions usually occur at the Commissioner's office at City Hall. Occasionally the Commissioner has need to discuss these matters over the telephone, but in such instances the assistant superintendent asks the dispatcher to leave the office. Whenever the dispatcher has been absent from work his supervisor has always chosen a Union employee as a temporary replacement even though he has the discretion to select a non-Union employee.

Although our Court has never been called upon before to construe the term "confidential employee" as used in our Vermont Municipal Labor Relations Act, we do not have to proceed without rudder or aileron. The federal counterpart, the Labor Management Relations Act, as set forth in 29 U.S.C. § 152(3), makes no explicit reference to "confidential employees," but over the past forty years the National Labor Relations Board (NLRB), using the "labor-nexus test," has defined "confidential employee" in connection with a myriad of job classifications. The federal courts have adopted with approval the labor-nexus test as used by the NLRB.

> The Board has long held that employees who "assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations" are deemed confidential employees and may be excluded from a bargaining unit.

*Westinghouse Electric Corp.* v. *NLRB*, 398 F.2d 669, 670 (6th Cir. 1968) (quoting *Ford Motor Co.*, 66 N.L.R.B. 1317, 1322 (1946)). In *NLRB* v. *Hendricks County Rural Electric Membership Corp.*, 454 U.S. 170, 176, 190 (1981), the United States Supreme Court specifically addressed the labor-nexus test; the Court granted certiorari to resolve a conflict among the courts of appeals, and decided in favor of adopting the test. *Id.* at 176. Thus, the labor-nexus test is clearly the law in federal courts.

In labor decisions involving legislation that parallels the Vermont Municipal Labor Relations Act our Court will look to federal decisions interpreting the federal act for guidance. *Burlington Fire Fighters Association* v. *City of Burlington,* 142 Vt. 434, 435, 457 A.2d 642, 643 (1983) ; *In re South-*

*western Vermont Education Association,* 136 Vt. 490, 492, 396 A.2d 123, 124 (1978). By "federal decisions" we mean those of the United States Circuit Courts of Appeals and the United States Supreme Court, however, and not the NLRB itself.

"Confidential employee" is defined in 21 V.S.A. § 1722(6) of the Vermont Municipal Labor Relations Act as:

> [A]n employee whose responsibility or knowledge or access to information relating to collective bargaining, personnel administration, or budgetary matters would make membership in or representation by an employee organization incompatible with his official duties.

The City maintained at the hearing before the VLRB and again before us that the duties of the dispatcher give him both knowledge and access to information relating to personnel administration, and that these duties would be incompatible with his loyalty to management if this position were included within the DPW collective bargaining unit. The VLRB agreed with the City and concluded that the dispatcher "has knowledge and responsibility relating to personnel administration as part of his regular duties which make his inclusion in the bargaining unit incompatible with his job."

The VLRB had to take one giant step forward from its findings to reach such a conclusion and in doing so spanned a great void in the evidence. Neither the VLRB's findings nor the record will support such a conclusion. The dispatcher's duties are essentially clerical and routine. He records and maintains the reports that indicate actual hours worked by employees. He has no discretion in tabulating the results. If there is a discrepancy between the hours reported in the time sheets submitted by the individual employee with those hours logged by the dispatcher, he is expected to call it to the attention of the assistant superintendent. Neither the dispatcher nor the assistant superintendent has any discretion or authority to recommend or take disciplinary action against an employee for such a discrepancy. If any disciplinary action is to be taken, it is in the sole discretion of the Commissioner of Public Works.

In like manner if the dispatcher notes in his records that an employee has returned to the garage prior to completion of his shift, he is required to submit this report to the assistant superintendent. Again, neither the dispatcher nor the assistant

superintendent has any discretion or authority to recommend or take disciplinary action against the employee. The Commissioner in his sole discretion has the authority to mete out discipline to the worker. These two duties cannot fairly cast the dispatcher in a role of conflict of interest between his Union and management, any more than would the duties of town treasurer who turns over a list of delinquent taxpayers to the town tax collector. In each instance, the individual is performing a routine clerical act as a part of his or her job.

The VLRB acknowledged that it was unnecessary for the dispatcher, in order to perform his regular duties, to have access to the assistant superintendent's confidential file. Two files could just as easily be maintained—one with a key, in the sole possession of the assistant superintendent, for his confidential file and another, an unlocked file, for the storage of routine transactions of the Street Department. The VLRB made no finding that the dispatcher assisted or acted in a confidential capacity to persons who exercise a managerial function in the field of labor relations, which is a necessary element under the labor-nexus rule if the dispatcher is to be classified as a confidential employee. Cf. *NLRB* v. *Rish Equipment Co.*, 687 F.2d 36, 37–38 (4th Cir. 1982) (facts supported finding that position was confidential).

▮▮ We agree with the Union. The record does not bear out that the position of dispatcher in the City's DPW is filled by a confidential employee as defined by 21 V.S.A. § 1722(6), and the findings of the VLRB cannot support such a conclusion. There is nothing either in the City's job classification for dispatcher or in the manner in which his job is carried out that makes it incompatible for such employee also to be a member of the Union. Although the VLRB is entitled to a large measure of informal discretion in determining whether an employee is a "confidential employee" and thus exempted from inclusion in a collective bargaining unit, *Firefighters of Brattleboro* v. *Brattleboro Fire Department*, 138 Vt. 347, 350, 415 A.2d 243, 245 (1980), in this instance we are convinced that the VLRB has outrun the evidence to support its conclusion. Its conclusion and order are clearly erroneous as a matter of law and must be reversed.

*Reversed.*