# International Brotherhood of Electrical Workers, Local 300 v. Enosburg Falls Water and Light Department

[527 A.2d 1150]

No. 85-379

Present: Hill, Peck, Gibson and Hayes,* JJ., and
Barney, C.J. (Ret.), Specially Assigned

Opinion Filed April 3, 1987

---

* Justice Hayes sat at oral argument, but did not participate in the decision.

*James W. Spink* of *Dinse, Erdmann & Clapp*, Burlington, and *Aaron D. Krakow* of *Feinberg & Feld*, Boston, Massachusetts, for Plaintiff-Appellee.

*Richard A. Gadbois*, Enosburg Falls, for Defendant-Appellant.

**Hill, J.** This is an appeal by the Enosburg Falls Water and Light Department (Department) from a Vermont Labor Relations Board (Board) decision holding that the Department committed unfair labor practices in violation of 21 V.S.A. § 1726. We affirm.

The International Brotherhood of Electrical Workers, Local 300 (Union) is the exclusive bargaining representative of the nonsupervisory employees of the Department. In June of 1984, the

Union notified the Department that the current collective bargaining agreement would expire on August 22, 1984, and that the Union desired to negotiate a new contract. The Union's notification letter contained five nonwage proposals and a wage increase proposal. The parties quickly reached agreement on all proposals except the wage proposal.

The Union and the Department actively negotiated the wage issue for the next few months without any success.[1] After meeting what the Union considered an impasse in the wage negotiations, the parties participated in an informal mediation session with a federal mediator on October 11, 1984. The parties met individually with the federal mediator during the substance of the session. While they reached no firm agreement, the parties did move closer to settlement on the wage issue. At the conclusion of the session, the Department's attorney, its only representative at the session, informed the Union representatives that he would have to communicate the various offers to the Department commissioners for their approval before his compromise positions could be binding. The Department's attorney thereafter consulted the commissioners, but they were unwilling to move from their pre-mediation-session wage proposal, and so notified the Union, thereby effectively repudiating all proposed compromise wage positions made by their attorney at the session.

The Union then requested fact finding on December 20, 1984. The fact finder's report, issued on February 26, 1985, recommended a wage increase above that requested by the Union. The Union agreed to accept the report but the Department did not. In the wake of the fact finder's report, negotiations continued until April 1, 1985, when the Union went on strike. Later that day, confrontations between Union members and individual commissioners at the Water and Light Department plant led the Union members to believe they had been fired.

On April 2, 1985, the Union filed an unfair labor practice complaint with the Board, alleging that the Department had violated 21 V.S.A. § 1726 by: (1) refusing to bargain in good faith with the Union; (2) discharging Union employees engaged in a lawful strike; (3) conditioning the reinstatement of these employees on

---

[1] Under Article 32 of the 1982-1984 Agreement, if negotiations for a successor contract continued beyond the expiration date of that agreement, it would continue in force until such negotiations were concluded.

agreements to drop union membership; and (4) refusal to resume bargaining.

After a hearing on the merits, the Board issued a decision finding that the Department had committed all of the unfair labor practices alleged in the Union's complaint. The Board ordered the Department to cease and desist from discharging striking employees, refusing to bargain in good faith with the Union, conditioning reinstatement on resignation from the Union, or in any other manner restrain or coerce its employees in the exercise of rights guaranteed them under state law. The Board further ordered the Department to: (1) resume collective bargaining with the Union; (2) offer striking employees immediate and full reinstatement to their former jobs; (3) award striking employees full back pay and benefits; (4) pay the union dues of a striking employee along with any readmission fee; and (5) post copies of the Board's order on Department bulletin boards.

The Department has complied with only affirmative relief order No. 5, and appeals all other aspects of the Board's decision and order.

I.

The Department's main argument is that the Board erroneously concluded that it had committed unfair Labor practices. In essence, the Department argues that there was insufficient evidence upon which the Board could base the findings which were made to support the conclusion that the Department committed the various unfair labor practices. The standard we use to review the findings of the Board is well established:

> "The prescribed law of this jurisdiction is that findings must stand if there is any credible evidence which fairly and reasonably supports them." Even though the evidence may appear to us, on the basis of the cold record, to preponderate against the findings of the trier of fact, we will not reverse, so long as the finding is supported by a quantity of evidence which is "more than a mere scintilla."

*In re Muzzy*, 141 Vt. 463, 470-71, 449 A.2d 970, 973 (1982) (quoting *Seaway Shopping Center Corp.* v. *Grand Union Stores, Inc.*, 132 Vt. 111, 118, 315 A.2d 483, 486 (1974), and citing *Green Mountain Power Corp.* v. *Commissioner of Labor & Industry*,

136 Vt. 15, 21, 383 A.2d 1046, 1049 (1978)) (citations omitted). With this deferential standard of review in mind, we turn to each of the unfair labor practices found by the Board.

## A. *Refusal to Bargain in Good Faith*

The Board concluded that the Department committed an unfair labor practice by refusing to bargain in good faith before the April 1, 1985, strike. Applying a "totality of the employer's conduct" test,[2] the Board based its finding of refusal to bargain in good faith on a number of incidents which occurred before the April 1 strike.

■ The Board correctly stated that the duty to bargain in good faith is an "obligation . . . to participate actively in the deliberations so as to indicate a present intention to find a basis for agreement . . . ." *NLRB* v. *Montgomery Ward & Co.*, 133 F.2d 676, 686 (9th Cir. 1943). Accordingly, there must be a "serious intent to adjust differences and to reach an acceptable common ground. . . ." *NLRB* v. *Insurance Agents' International Union*, 361 U.S. 477, 485 (1960). The Board also correctly stated that employer bad faith bargaining may be manifested in many ways, requiring an analysis of the totality of the employer's conduct within the context in which the bargaining took place in order to determine whether there has been a failure to bargain in good faith. *Continental Insurance Co.* v. *NLRB*, 495 F.2d 44, 48 (2d Cir. 1974).[3]

---

[2] The Board appropriately borrowed this test from federal decisions because federal court decisions can be looked to for guidance where the language of the Vermont Municipal Labor Relations Act (VMLRA) parallels a similar provision in the National Labor Relations Act (NLRA). *In re Local 1201, AFSCME*, 143 Vt. 512, 515, 469 A.2d 1176, 1179 (1983). 21 V.S.A. §§ 1725(a), 1726(a)(5), and 29 U.S.C. §§ 158(d), 158(a)(5), are substantively equivalent, making the Board's reliance on federal decisions in the area of good faith bargaining appropriate.

[3] This is the standard applicable when specific conduct of an employer does not constitute a per se violation of the duty to bargain in good faith. The rationale for a totality of the circumstances analysis was well stated by the court in *Continental Insurance Co.* v. *NLRB*, 495 F.2d at 48 (citations omitted):

> The problem . . . in resolving a charge of bad faith bargaining, is to ascertain the state of mind of the party charged, insofar as it bears upon that party's negotiations. Since it would be extraordinary for a party directly to admit a "bad faith" intention, his motive must of necessity be ascertained from circumstantial evidence. Certain specific conduct, such as the Company's unilateral changing of working conditions during bargaining, may constitute *per se* violations of the duty to bargain in good faith since they

The Board made three central findings which, taken together, formed the basis for its conclusion that the Department failed to bargain in good faith. First, the Board found that by failing to send a representative to the October 11, 1984, mediation session with full authority to enter into a binding agreement, the Department committed an unfair labor practice. While we agree that the evidence was sufficient to support the finding that the Department's representative at this session lacked the authority to conclude a wage agreement, we cannot agree that this conduct, in and of itself, constituted an unfair labor practice.

■ There is "no duty on the part of an employer to be represented at the bargaining table by a person with competent authority to enter into a binding agreement with the employees . . . ." *NLRB* v. *Coletti Color Prints, Inc.*, 387 F.2d 298, 304 (2d Cir. 1967). Rather, use of a negotiator without authority to bind the employer is merely some evidence, to be considered in conjunction with other conduct, of employer bad faith. *NLRB* v. *Advanced Business Forms Corp.*, 474 F.2d 457, 467 (2d Cir. 1973); *NLRB* v. *Fitzgerald Mills Corp.*, 313 F.2d 260, 267 (2d Cir.), *cert. denied*, 375 U.S. 834 (1963). Accordingly, we hold that that part of the Board's order holding this conduct by itself to constitute an unfair labor practice was erroneous.[4]

---

in effect constitute a "refusal to negotiate in fact." Absent such evidence, however, the determination of intent must be founded upon the party's overall conduct and on the totality of the circumstances, as distinguished from the individual pieces forming part of the mosaic. Specific conduct, while it may not, standing alone, amount to a *per se* failure to bargain in good faith, may when considered with all of the other evidence, support an inference of bad faith.

[4] This part of our decision disposes of the Department's argument that the Board did not have jurisdiction to issue its unfair labor practice complaint because it was based on unfair labor practices occurring more than six months prior to the filing of the charge. The limitations period for unfair labor practice charges is contained in 21 V.S.A. § 1727(a), which provides, in relevant part:

No complaint shall issue based on *any unfair labor practice* occurring more than six months prior to the filing of the charge . . . .

21 V.S.A. § 1727(a) (emphasis added). Since failure to send a representative to the bargaining table with full authority to conclude an agreement is not per se an unfair labor practice, the complaint in this case did not "issue based on any unfair labor practice occurring more than six months prior to the filing of the charge . . . ." Rather, the complaint issued on the basis of conduct that is only some evidence of an unfair labor practice, and is therefore not time barred by the terms of § 1727(a).

■ This defect is not necessarily fatal, however, to the Board's conclusion that the Department failed to bargain in good faith. The Board could still consider the Department's conduct in sending a representative to the table without authority to take binding positions as some evidence of bad faith. More importantly, as noted above, the Board made two additional findings in support of its conclusion that the Department failed to bargain in good faith prior to the April 1, 1985, strike. First, the Board found, based on the undisputed evidence, that none of the Department commissioners attended the January 26, 1985, fact finding session. Only the Department's attorney attended, and he lacked the authority to make any binding agreement. We agree with the Board that in practice, fact finding, like mediation, involves an active effort to identify an acceptable compromise settlement to resolve the negotiations dispute. *Unified School District #36* v. *Bartlett*, 8 V.L.R.B. 77, 79 (1985) (quoting T. Kochan, *Public Sector Bargaining*, at 182-83 (BNA 1978)). Thus, the commissioners' failure to attend the fact finding session, or send to the session a representative with authority to take binding compromise positions, to the extent that it hindered the overall negotiation process, was appropriately considered by the Board as additional evidence of the Department's refusal to bargain in good faith.

■ In the third finding made to support its conclusion on the issue of good faith bargaining, the Board found further evidence of the Department's bad faith in an absence of a credible basis for the Department's adherence throughout the prestrike period to its initial wage offer. There is ample evidence in the record of contradictory statements made at different times by the Department's attorney about the reasons for the Department's inability to pay a wage increase. From these contradictory statements, the Board inferred that at least some of the asserted justifications had to be dishonest in nature. Good faith bargaining requires that claims made by either bargainer should be honest, and this principle applies to asserted inability to pay wage increases. *NLRB* v. *Truitt Manufacturing Co.*, 351 U.S. 149, 152 (1956). Given the state of the evidence on this point, and the clear duty on the part of the Department to make honest claims about the inability to pay a wage increase, the Board's conclusion that the Department's conduct regarding wage proposals was some evidence of its failure to bargain in good faith was not error.

■ In sum, the Board's findings on the issue of good faith bargaining during the prestrike period were amply supported by the evidence. Furthermore, looking at the totality of the Department's conduct within the context in which the bargaining took place, *Continental Insurance Co* v. *NLRB*, 495 F.2d at 48, the Board correctly concluded that the Department did not bargain in good faith. The Department's conduct was aimed more at frustrating the bargaining process than at facilitating it, and was therefore the type of conduct, viewed as a whole, which is prohibited by 21 V.S.A. § 1726(a)(5).

### B. *Firing of Employees Engaged in Lawful Strike*

■ The Union contends that 21 V.S.A. § 1726(a)(1), which declares that it is an unfair labor practice to "interfere with, restrain or coerce employees in the exercise of their rights guaranteed by this chapter or by any other law, rule or regulation," prohibits the discharge of employees engaged in a lawful strike. In interpreting the NLRA, federal courts have held that discharging employees for engaging in a lawful strike is an unfair labor practice. See *NLRB* v. *International Van Lines*, 409 U.S. 48, 50-51 (1972) ("employees striking in protest of an employer's unfair labor practices are entitled, absent some contractural or statutory provision to the contrary, to unconditional reinstatement with back pay, 'even if replacements for them have been made.' ") (citing *Mastro Plastics Corp.* v. *NLRB*, 350 U.S. 270, 278 (1956)); *NLRB* v. *Comfort, Inc.*, 365 F.2d 867, 874-75 (8th Cir. 1966) (The rule is firmly settled that unfair labor practice strikers are protected against discharge and against permanent replacement.). We think the same rule should apply under the VMLRA. As the Board stated: "We can think of few actions more inherently destructive of employees' collective bargaining rights than discharging employees engaged in a lawful strike."

The Department does not contend that the Union employees were not engaged in a legal strike, but rather that the evidence does not support the Board's finding that they were in fact fired.

Whether or not a striker has been discharged depends on whether the actions of the employer "would reasonably lead the employees to believe that they had been discharged." *NLRB* v. *Hilton Mobile Homes*, 387 F.2d 7, 9 (8th Cir. 1967). The Board's finding that the striking employees were fired must stand if there

is any evidence in the record which fairly and reasonably supports it. *In re Muzzy*, 141 Vt. at 471, 449 A.2d at 973. After careful review of the evidence presented, we find it unnecessary to restate it here: Suffice it to say that there was ample evidence presented to support the Board's finding. Accordingly, the Board's conclusion that the Department committed an unfair labor practice by firing the striking employees must be affirmed.[5]

## II.

The Department's remaining argument is that it was error for the Board to exclude documentary and testimonial evidence regarding a claim for unemployment compensation filed by several strikers, and offered by the Department for purposes of impeaching the strikers, with prior inconsistent statements, on the issue of whether they were discharged. In excluding the evidence, the Board relied on 21 V.S.A. § 1314(g), which provides:

> All written, or oral reports, or other communications, from an employer or his workers to each other, or to the commissioner or any of his agents, representatives, or employees, made in connection with the requirements and administration of this chapter or the regulations thereunder, shall be absolutely privileged and shall not be made the subject matter or basis for any suit for slander or libel in any court of this state, unless they are false in fact and malicious in intent.

The Department argues that it was prejudiced by the Board's exclusion of this evidence in that the evidence was its best available source of proof that the Union employees did not believe that they had been fired. Nevertheless, the Department does not now

---

[5] The Department in the part of its brief entitled "Conclusion" requests that all parts of the Board's decision and order be reversed, except that portion ordering it to post a copy of the Board's order on Department bulletin boards. Nevertheless, the Department did not brief or argue the issue of whether it committed an unfair labor practice by conditioning reinstatement on resignation from the Union, and it has therefore waived this issue. *In re Smith, Bell & Hauck Real Estate, Inc.*, 132 Vt. 295, 300, 318 A.2d 183, 187 (1974).

The Department also has not expressly briefed the question of whether the relief ordered by the Board is appropriate if it is assumed that the unfair labor practices alleged by the Union were committed. Accordingly, this issue was also waived. *Id.*

argue that the privilege was inapplicable; it argues instead that the privilege was waived when the striking employees took the witness stand and testified on the issue of discharge.

The Department is barred from raising its waiver argument for the first time in this appeal because it failed to claim this ground for admission of the evidence in its offer of proof below. In the Board hearing, the Department based its argument for admissibility exclusively on its interpretation of the statute as not barring such evidence in Board hearings. If a specific ground for admission is claimed in the offer of proof but is not applicable, and the trial court excludes the evidence, the proponent cannot complain on appeal if there was another ground for admission which it did not argue below. *Dean* v. *Arena*, 141 Vt. 647, 650, 450 A.2d 1143, 1145 (1982); *Hayward Rubber Co.* v. *Duncklee*, 30 Vt. 29, 40 (1856). The Board's ruling was therefore without error.

*Affirmed.*