**PARKWAY SCHOOL DISTRICT, Appellant,**

v.

**PARKWAY ASSOCIATION OF EDUCATION, SUPPORT PERSONNEL, PA–ESP, LOCAL 902/MNEA, Respondent.**

**No. 73187.**

Supreme Court of Missouri, En Banc.

April 9, 1991.

Thomas E. Tueth, JoAnne Levy Saboeiro, St. Louis, for appellant.

Arthur J. Martin, Charles A. Werner, St. Louis, for respondent.

Steven L. Wright, Gen. Counsel, Columbia, for amicus Missouri School Boards Ass'n.

William L. Webster, Atty. Gen., Mary Joe Smith, Asst. Atty. Gen., Jefferson City, for amicus.

BLACKMAR, Chief Justice.

Parkway Association for Education Support Personnel, Local 902/MNEA sought an election among two hundred thirty clerical employees of Parkway School District to determine whether it could act as their representative under the Missouri Public Sector Employees Labor Law. The school district sought to exclude seventy employees from the unit, claiming that they were "confidential" employees who could not properly be included in a bargaining unit containing rank and file employees. The State Board of Mediation sustained the district's position as to eight of the employees but rejected it as to the others. An election was held in which the union was chosen as the bargaining agent for the unit certified by the board. The district petitioned for review in circuit court pursuant to § 105.525, RSMo 1986. The union did not challenge the portions of the board's order adverse to it. The court denied the petition, but the court of appeals reversed as to the forty-one employees whom the district put in issue on the appeal. We granted the union's application for transfer because of the important issues raised by the board's departure from the position it took in *Missouri Nat. Educ. Ass'n. v. Missouri State Bd. of Mediation*, 695 S.W.2d 894 (Mo. banc 1985) ("the Belton case"), which involved very similar facts. We hold that the board appropriately exercised the authority conferred on it by law and that its decision is supported by substantial evidence on the record as a whole. We there-

fore affirm the judgment of the circuit court.

Parkway is a major school district of St. Louis County with four high schools, four junior high schools, and seventeen elementary schools. It is governed by a six-member board of directors elected by the voters. The directors choose the superintendent, who is responsible to it for all operations of the district. He is assisted by a deputy superintendent and four assistant superintendents, one of whom is in charge of personnel. Each school building is in the charge of a principal. Some schools have associate and assistant principals. The district also has officials described variously as coordinators, managers, and directors, who are responsible for particular phases of the district's operation (e.g., the Coordinator of Reading Services).

The secretaries whom the district sought to exclude as "confidential employees" are as follows:

  4 secretaries to assistant superintendents
  4 secretaries in the personnel office
  14 secretaries to those of the central office coordinators, directors and managers who supervised substantial numbers of employees
  48 secretaries to principals, and associate and assistant principals

The board sustained the district's position only as to the secretaries to the assistant superintendents and those in the personnel office. In so holding it departed from the *Belton* case, which had applied a "confidentiality" test, and undertook to return to the "labor nexus" test, initially devised by the National Labor Relations Board [1] and applied by the Missouri State Board of Mediation from 1975 to 1982.[2]

Although the district's petition for review covered all seventy employees as to

whom the board had denied it relief, its appeal placed in issue the representation status only of the twenty-seven principals' secretaries and the fourteen secretaries to the central office department heads.[3]

The Board of Directors of the School District has the ultimate authority in the formation and implementation of labor relations policy, including hiring, discipline, firing and wage determination. It acts after receiving recommendations from the superintendent. Labor relations are the direct charge of the assistant superintendent in charge of personnel, assisted by the director of labor relations. Negotiations are handled by a management team headed by the director of labor relations. The team has always had at least one principal and usually has more. It gets its authority and instructions from the school board and the superintendent but does not participate in top level meetings on labor relations policy. The board expressly found that the persons primarily responsible for effectuating labor relations policies are the superintendent, the deputy and assistant superintendents, and the director of labor relations.

Each principal supervises the teachers, custodians, cooks and support personnel in the building. The principal may effectively recommend the hiring of teachers from applicants supplied by the personnel office, but the actual hiring is by the school board. The principals evaluate the employees under them, making use of forms supplied by the personnel office. They may issue reprimands and, in serious cases, may initiate action for suspension or termination. Principals handle the first step of the grievance procedure for employees in their building but their decisions are subject to processing through the successive steps of the procedure. Principals have no authority to set salaries, but have been allowed to make

---

1. *See In the Matter of the Hoover Company and United Electrical, Radio & Machine Workers of America,* 55 NLRB 1321 (1944). The labor nexus test was approved by the United States Supreme Court in *NLRB v. Hendricks County Rural Elec. Membership Corp.,* 454 U.S. 170, 102 S.Ct. 216, 70 L.Ed.2d 323 (1981).

2. *See International Brotherhood of Electrical Workers, Local 95 v. City of Monett,* Public Case

No. 106 (SBM 1976) and *Missouri Education Association v. Belton School District,* Public Case No. 81–015 (SBM 1982).

3. Although the *Belton* case sustained the board's exclusion of secretaries to assistant principals, it included them in this case, and the district does not now challenge this part of the board's decision.

adjustments to overall wage increases, to make recommendations where layoffs are necessary, and to use the limited resources of their school building funds to retain employees who would otherwise be laid off.

As to the duties of the principals' secretaries, the board of mediation found as follows:

> The secretaries assigned to work for the principals, associate principals and assistant principals perform routine secretarial tasks such as sorting mail, answering the telephone, and typing various correspondence, including documents relating to evaluations, grievances and reprimands. However, there is no evidence that at any time have the secretaries assigned to a principal read or type [sic] documents concerning collective bargaining, strategy or recommendations made by a principal to the informational committees.

Each of the fourteen employees variously described as "manager, director, or coordinator" heads a particular department in the central administrative office. They do not participate directly in labor negotiations, even though some may serve on a rotating basis on central administrative committees established by the superintendent. They have hiring and disciplinary authority and responsibility for evaluations comparable to that of the school principals and conduct the first step of the grievance procedure for employees reporting to them. As to their secretaries, the board found as follows:

> The secretaries assigned to work for these administrators perform routine secretarial tasks such as typing, answering telephone calls, and sorting mail. In their jobs, they may be called upon to type reprimands, evaluations, and any documents generated by a grievance procedure. Also, the secretaries generally have access to the personnel files in their administrator's office. However, there is no evidence in the record that the secretaries assigned to the directors, coordinators or managers, open correspondence or type documents that pertain to ... any other labor relations materials.

The board expressed its conclusions as to the responsibilities of the school principals as follows: ·

> An additional and perhaps more important consideration in the Board's finding that these second level administrators and principals do not formulate or determine the district's labor relations policy is their limited involvement with the labor negotiation process....

With specific reference to the principals' secretaries, the board concluded as follows:

> [T]his Board finds that the secretaries in question are not confidential employees who must be excluded from the bargaining unit. That these secretaries type letters of reprimand and employee grievance decisions is not sufficient for the Board to conclude that they assist and act in a confidential capacity to their managerial employee. There is no evidence that these secretaries type, read or discuss any matters in advance concerning the district's labor relation policies. They do not assist in preparing documents that are used in the formulation of the district's labor negotiations.

The board's findings as to the managers, coordinators and directors are similar and consistent. The board observed that "there is insufficient evidence to conclude these persons formulate and determine the district's labor relations policy." It concluded that their secretaries should not be excluded as confidential employees.

Article I, § 29, of the Missouri Constitution reads as follows:

> That employees shall have the right to organize and to bargain collectively through representatives of their own choosing.

It has been expressly held that this article applies only to employees in the private sector, and not to public employees. *City of Springfield v. Clouse,* 356 Mo. 1239, 206 S.W.2d 539 (1947). Public employees, however, have rights of freedom of expression and association with regard to their employment situation under §§ 8 and 9 of Art. I, and these provisions connote a right to

join organizations and select representatives to confer with their employers. This Court said in *State ex rel. O'Leary v. Missouri State Bd. of Mediation*, 509 S.W.2d 84, 87 (Mo. banc 1974):

> We are convinced that any approach to the problem initially must give recognition to that fundamental issue which stems from one question, i.e., are public employees who work within the judicial department of government to be accorded those constitutional rights enjoyed by other public employees? Absent some compelling reason to the contrary, the answer must be "yes." [4]

In 1967 the Missouri General Assembly passed the Public Sector Labor Law, §§ 105.500 to 105.530, RSMo 1986, allowing certain public employees to select representatives with authority to meet and confer with their employing agencies regarding wages, hours and working conditions. These do not amount to true collective bargaining rights, for the ultimate weapon of the strike is denied to public employees. *See* § 105.530, RSMo 1986. With this exception, the process of choosing representatives and conducting negotiations resembles the procedures available under the federal labor relations statutes.

The National Labor Relations Board has long held that certain employees should be excluded from bargaining units containing rank and file employees. Supervisors have been excluded on the principle that they should not be included in a bargaining unit with the employees they supervise. It is not claimed that any employee involved in this case is a supervisor.

Under the NLRB's labor nexus test it is not sufficient to show that an employee has responsibility for protecting the confidences of management, or has access to confidential information. The test applies only to employees having access to advance information about management's strategy and tactics in labor matters which might be used to the detriment of management. It must be emphasized that the NLRB, in making its determinations about confidential employees, has no statutory guidance

whatsoever and has proceeded solely under its authority to determine the appropriateness of bargaining units.

Our statutes likewise contain no definition of "employee" and no express exclusion of supervisory or confidential employees. The State Board of Mediation, however, has the statutory responsibility for determining the appropriateness of a bargaining unit and, pursuant to this authority, has undertaken to exclude confidential employees. Section 105.500(1) defines "appropriate unit" as follows:

> "Appropriate unit" means a unit of employees at any plant or installation or in a craft or in a function of a public body which establishes a clear and identifiable community of interest among the employees concerned....

The board has given substantial attention to the decisions of the NLRB. In 1982, however, it decided the *Belton* case, later affirmed by us in *Missouri Nat. Educ. Ass'n. v. Missouri State Bd. of Mediation*, 695 S.W.2d 894 (Mo. banc 1985), in which it undertook to exclude all employees having a confidential relationship to management, without regard to their labor nexus. The board said that the labor nexus test was "too narrow to provide a workable basis...." *Id.* at 898. It would appear that under the *Belton* test, any secretary to a supervisor would be excludable as a confidential employee. We upheld this change in policy on the basis of the board's discretion, saying at p. 899:

> For a number of reasons we decline to convert what has heretofore been a matter of administrative policy into court declared law.

In so holding, however, we recognized the breadth of the board's discretion in implementing statutory policy, stating:

> In the event that the guidelines announced by the Board in this case prove to be unworkable, the Board is free to modify or discard them. "[T]here is no application of the doctrine of stare decisis to administrative tribunals."

4. *See also State ex rel. Missey v. City of Cabool,* 441 S.W.2d 35 (Mo.1969).

*Belton,* 695 S.W.2d at 899, *citing City of Columbia v. Missouri State Bd. of Mediation,* 605 S.W.2d 192 (Mo.App.1980).

Now the board has done the very thing we recognized its authority to do, in concluding that its "confidentiality" test was impracticable, and that there should be a return to the labor nexus test.[5] It is not our office to probe deeply the reasons for this reversion to prior policy. Determinations about the standards of appropriateness of a bargaining unit are primarily for the board. Our only inquiry is as to whether it is operating within its statutory mandate. Just as we did in the *Belton* case, we give great deference to the board's policy determinations.

The appropriate standard governing our review is set forth in the Administrative Procedure Act, § 536.140.2, RSMo 1986, as follows:

> The inquiry may extend to a determination of whether the action of the agency ... (3) is unsupported by competent and substantial evidence upon the whole record. ...

The district argues, however, that this standard does not govern review of decisions of the State Board of Mediation and that the *Belton* case established legal standards requiring the exclusion of confidential employees. We do not agree.

The essential issue is whether the challenged employees have such a close relation to the district's management of labor relations that the district would be prejudiced by their inclusion in a bargaining unit with other employees. The employees involved surely have common interests with other employees in securing improvement in wages, hours and working conditions, and in obtaining assistance in the processing of grievances. The board has recognized that there is strength in size and that a unit may be too small to be effective,[6] so that employees should be excluded from bargaining units only for substantial reasons.[7] The determination whether the employer may be prejudiced is a question which can be efficiently decided only by those who are familiar with the relations of employers and employees and with the dynamics of collective bargaining in the public sector.

The State Board of Mediation was established by the General Assembly as a specialized agency possessed of broad discretion. It consists of employer and employee representatives in equal numbers, with a neutral chairperson. *See* § 295.030.1, RSMo 1986. It is to be expected that the employer and employee representatives will draw upon their specialized knowledge in contributing to informed decisions. The argument for deference to administrative findings on issues such as are now before us is indeed stronger than is the case with regard to other administrative agencies, many of which function very much as courts do in hearing evidence and ruling on the claims of individuals (e.g., the Commission on Labor and Industrial Relations in adjudicating workers' compensation cases). Determination of the facts is only the first step in bargaining unit cases. The premium is in the evaluation of the facts in context, in the implementation of the very general mandate of the statute. Even if the facts are virtually undisputed, the board has a substantial task of evaluation.

Here the chairperson of the board presided at a hearing memorialized in a lengthy transcript. Each of the parties had the opportunity to put on evidence about what the principals and supervisors, and their secretaries, actually do, and of their involvement in the labor relations processes of the district. Under the district's argument, the courts would be obliged to plow

---

5. *See International Association of Fire Fighters, Local 2665, Professional Fire Fighters of St. Louis County v. Riverview Fire Protection District,* Public Case No. R87–017 (SBM 1987).

6. *Ste. Genevieve Federation of Classified Employees, Local 4126 v. Ste. Genevieve School District R–II,* Public Case No. 80–036 (SBM 1982).

7. *See, e.g., Jackson County v. Missouri State Bd. of Mediation,* 690 S.W.2d 400 (Mo. banc 1985); *City of Cabool v. Missouri State Bd. of Mediation,* 689 S.W.2d 51 (Mo. banc 1985); *see also Golden Valley Memorial Hospital Dist. v. Missouri State Bd. of Mediation,* 559 S.W.2d 581 (Mo.App.1977).

the same ground in determining the legality of the board's action. This is not consistent with the general understanding of the administrative process, and there is absolutely no assurance that it would lead to a better result. The contrary, indeed, is probably the case. The board's discretion in value judgments is all the more appropriate because the legislature has provided only minimum guidance. The legislature necessarily contemplated that the board would make use of its specialized knowledge which the courts lack.

The board well might have found that the principals' and department heads' roles in labor relations are not essentially different from those of supervisors generally, that they play only minor parts in the establishment of labor relations policy, and that everything they do in the labor relations area is subject to review at one or more higher levels. It could have found that very little time of the secretaries in issue is consumed in such tasks as the typing of evaluations, reprimands, and grievance documents, and that they did not have the means for obtaining advance information about bargaining positions and personnel decisions. The case is strengthened as to the principals' secretaries in that most of the documents concerning employment status have to do with teachers, who cannot select the union as a bargaining agent. § 105.510, RSMo 1986. The board could conclude that the confidential relationship between a management official and the official's secretary is not enough to justify the exclusion of the secretary from the bargaining unit. Any supervisor who has a secretary properly expects that the secretary will keep confidences, but the secretary shares an interest with other employees in the fruits of the bargaining process. We do not believe that we should substitute our judgment for the board's thoroughly considered decision on a matter that the legislature has committed to its authority and discretion.

The district argues that the *Belton* case was not limited to the upholding of the board's change in policy, but actually established a rule of law binding on the board in all future cases. This contention is refuted by the very text of the opinion. The recitals in the opinion simply illustrate the findings the board might have made and the conclusions it might have drawn, about which employees should be excluded as confidential. We did not say, and did not intend to say, that these were the only findings and conclusions the board could have drawn from the evidence. We expressly confirmed the board's authority to experiment.

The district then argues that the board's conclusions are erroneous even under the "labor nexus" test. This test, however, is not statutory. It was initiated by the NLRB as an aid in the effectuation of its statutory duty to determine the appropriateness of bargaining units. Nothing in the statute makes the decisions of the NLRB binding on the State Board of Mediation, even if they should support the district's position, which they do not appear to. The board may use those decisions as resources in its decisionmaking, but we are not obliged to square the two sets of decisions. The board is entitled to formulate its own test, however named. Its decisions establish the test.

The board, from the record, could properly conclude that the school principals and the district department heads did not play such an important part in the formulation, determination and effectuation of district labor relations policy that their secretaries should be denied access to the rather limited benefits of representation available under the Missouri Public Sector Labor Law. Its decision is supported by substantial evidence on the record as a whole and is in accord with statutory policy.

■ Our holding is consistent with *Board of Educ. of Community Consol. High School Dist. No. 230, Cook County v. Illinois Educational Labor Relations Bd.*, 165 Ill.App.3d 41, 116 Ill.Dec. 91, 518 N.E.2d 713 (1987). *Accord, Pennsylvania Labor Relations Bd. v. Altoona Area School Dist.*, 480 Pa. 148, 389 A.2d 553 (1978); *In re Nashua Ass'n. of School Principals*, 119 N.H. 90, 398 A.2d 832 (1979); and *University System v. State*,

117 N.H. 96, 369 A.2d 1139 (1977). Statutory differences are not significant. Those decisions reflect the principle, inherent in some of our holdings, that the presumption should be in favor of inclusion in the major bargaining unit. Supporting cases are set out in footnote 7. It should be a rare case in which the courts reverse a decision of the State Board of Mediation in favor of organizational representation.

The judgment of the circuit court, sustaining the decision of the State Board of Mediation and denying the district's petition for review, is affirmed.

ROBERTSON, RENDLEN, HIGGINS, COVINGTON and HOLSTEIN, JJ., and FLANIGAN, Special Judge, concur.

BILLINGS, J., not sitting.