# Harwood Union High School District v. Harwood Education Association

[773 A.2d 277]

No. 99-173

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed April 6, 2001

*Steven F. Stitzel* and *Timothy M. Eustace* of *Stitzel, Page & Fletcher, P.C.*, Burlington, for Plaintiff-Appellant.

*Joel D. Cook, Vermont-National Education Association*, Montpelier, for Defendant-Appellee.

**Skoglund, J.** Petitioner Harwood Union High School District appeals the majority decision of the Vermont Labor Relations Board concluding that three administrative assistants working for the district are not confidential employees, as defined in 21 V.S.A. § 1722(6), and thus should be included in a bargaining unit represented by respondent Harwood Education Association. Because we conclude that the Board did not commit clear error by refusing to classify the three administrative assistants as confidential employees, we affirm its decision.

The district operates a high school and middle school in the same building in Moretown, Vermont. The association is the exclusive bargaining representative for eligible employees of the district, including secretarial staff. The district reorganized its administrative structure several times in the years leading up to the instant proceeding. In 1995, the administrative staff included a principal, an associate principal for each school, and a special education department head. The secretary to the principal was excluded from the bargaining unit, while the secretary for the two associate principals and the secretary for the special education department head were included in the bargaining unit.

During the 1995-1996 academic year, the district's administrative structure changed to include a high school principal, a middle school

principal, a part-time special services coordinator, and a part-time special education department head. Pursuant to a memorandum of agreement that followed a unit clarification petition, the secretaries for both of the principals were excluded from the bargaining unit, while the secretary for the two special education positions was included in the bargaining unit. For the 1996-1997 academic year, the district consolidated the two part-time special education positions, but otherwise the administrative structure remained the same.

During the 1997-1998 academic year, the district reorganized the administrative positions again by creating a principal, a high school administrator, a middle school administrator, and a special services coordinator. One of the primary reasons for the reorganization was to place a greater emphasis on teacher development and evaluation. Each of the four administrators was made responsible for observing and evaluating approximately eighteen teachers on four occasions during each school year.

Under this administrative structure, the one in place at the time of the Board hearing, the principal oversees the entire school operation, while the other three administrators retain nearly complete authority over their areas of responsibility. The administrative assistants (formerly called secretaries) to the principal and the high school administrator were initially excluded from the bargaining unit, while the administrative assistant to the special services coordinator was included in the unit. For the 1998-1999 academic year, the district retained its administrative structure but added an administrative assistant position to support the middle school administrator.

On August 19, 1998, the district filed a unit clarification petition with the Board requesting that the administrative assistants to the high school administrator, the middle school administrator, and the special services coordinator be excluded from the association's bargaining unit as confidential employees. The parties do not dispute that the principal's administrative assistant should be excluded from the bargaining unit.* Following an evidentiary hearing, the Board concluded, in a two-to-one decision with the acting chair dissenting, that the three administrative assistants were not confidential

---

* The Board made no findings addressing the duties of the principal's administrative assistant or comparing her duties to those of the administrative assistants who are the subject of the instant appeal. Nor do the parties' briefs address the duties of the principal's administrative assistant or compare her duties to those of the other administrative assistants.

employees and thus were entitled to be part of the association's bargaining unit.

The proceedings before the Board were governed by Vermont's Municipal Employee Relations Act, 21 V.S.A. §§ 1721-1735. Among the expressed purposes of the Act are to prescribe the rights of municipal employees and employers in their relations to each other, to provide procedures for preventing either group from interfering with the rights of the other, and to protect the rights of individual employees to join employee organizations and to bargain collectively. *Id.* § 1721. The Act excludes "confidential employees" from its definition of "municipal employee." *Id.* § 1722(12)(D). A "confidential employee" is defined under § 1722(6) as one "whose responsibility or knowledge or access to information relating to collective bargaining, personnel administration, or budgetary matters would make membership in or representation by an employee organization incompatible with his official duties."

Following the December 3, 1998 evidentiary hearing on the district's unit clarification petition, the Board made the following undisputed findings. Regarding matters of personnel administration, all three of the administrative assistants do routine clerical work such as answering the phone, opening and distributing mail, and typing documents for their administrator. Each of the assistants has unlimited access to teacher personnel files, which contain confidential documents, including written evaluations and any disciplinary letters. The assistants to the high school and middle school administrators type the teacher evaluations written by their administrator, distribute them to the teachers, and place a signed copy in the teacher's personnel file. Those assistants also occasionally type disciplinary letters.

In addition to routine secretarial work, the administrative assistant for the special services coordinator is responsible for maintaining staff schedules and planning the coordinator's unannounced observations of approximately thirty-six teachers and paraeducators. The coordinator types evaluations and disciplinary letters, but the assistant places them in the teacher's file. Because the assistant is extensively involved in coordinating students and staff, she knows which teachers may or may not receive a reduction-in-force (RIF) notice before those individuals themselves are notified.

Regarding matters related to the budgetary process, the Board found that the assistants to the high school and middle school administrators compile publicly available statistical information for the administrators to use in their budget proposals for their own areas of

responsibility. The way the administrators use the information, however, is known only to the administrators, the assistants, and the school board. The assistant for the high school administrator also types budgetary memoranda that might include proposed staffing changes. The assistant for the special services coordinator gathers and applies information for a service plan that may result in sending RIF notices to paraeducators.

Regarding matters related to collective bargaining, the Board found that the administrative assistants for the high school and middle school administrators type reports containing the administrators' comments. on provisions of the current collective bargaining agreement that they consider to be detrimental to instructional practices.

The Board also found that the district, through its administrators, regularly consulted with association representatives about personnel issues, including disciplinary and performance concerns involving bargaining unit members, before notifying the affected employee. Further, the Board found that at least one of the department heads active in the association is extensively involved in the budget process and maintains a continuing dialogue concerning the budget before a final budget plan is adopted. Moreover, the Board found that, before the most recent bargaining negotiations, the principal and a union representative discussed recommendations for changes in the collective bargaining agreements.

Based on these and other findings, the majority of the Board determined that none of the aforementioned duties warranted excluding the assistants from the bargaining unit. Regarding matters of personnel administration, the Board noted that the assistants had typed only a few disciplinary letters, and that, in any case, association members are privy to disciplinary and performance-related matters even before the affected employees are notified. The Board concluded that the district had failed to demonstrate how it is harmed or the association benefited as the result of the assistants' clerical involvement in these matters. The Board further noted that, through minor procedural changes, the special services coordinator could easily address any concerns about preventing teachers or paraeducators from learning of unannounced observations in advance.

As for budgetary matters, the Board relied on its findings that the association is significantly involved in the development of the budget before it reaches its final form, and that the statistical information used in the budget process is available to the public and the association. While acknowledging that the association may not see

every draft of every memorandum concerning budgetary matters, the Board noted that the "highly consultative" process involves a "continuous dialogue" between the district and the association. The Board concluded that, given this climate, the assistants' duties pertaining to budgetary matters are not sufficiently confidential to warrant the exclusion of the employees from the bargaining unit. Concerning the special services assistant's advance knowledge of RIF notices, the Board stated that such notices are routinely handed out each spring, that no paraeducator had ever lost an opportunity to work as the result of an RIF notice, and that everyone knows that the RIF procedure, which is set forth in the collective bargaining agreement, is based on seniority.

Finally, the Board concluded that the assistants' rare access to confidential matters concerning collective bargaining is too infrequent to make representation of the assistants in the association incompatible with their official duties.

In his dissenting opinion, the chair agreed that the involvement of the three administrative assistants in collective bargaining is too limited and infrequent to make representation by the association incompatible with their official duties. The chair also agreed that the assistants to the high school and middle school administrators are not regularly involved in budgetary matters that would warrant their exclusion from the bargaining unit. The chair concluded, however, that the special services assistant should be excluded from the bargaining unit because of her extensive involvement in assisting the special services coordinator in formulating her budget. Specifically, the chair noted that the special services assistant was in a key position to know which persons may or may not lose their jobs as the result of the budgetary process.

The chair also concluded that all three of the assistants should be excluded as confidential employees because of their involvement in matters of personnel administration. The chair cited the assistants' unlimited access to personnel files containing confidential information, as well as their assistance in preparing drafts of written evaluations. Further, the chair questioned the standard of requiring the district to demonstrate harm to it or benefit to the association resulting from allowing the assistants to be part of the bargaining unit. According to the chair, the question should be whether there is a reasonable possibility of harm if the assistants were allowed in the bargaining unit. The chair concluded that there was such a possibility because the assistants' access to confidential matters relating to personnel

administration and the budget might well create divided loyalties among those employees.

On appeal, the district challenges the majority decision, arguing that the Board erred (1) in failing to fairly consider the district's concerns regarding employee loyalty, (2) in evaluating the assistants' regular duties solely on the basis of evidence of tasks actually performed as of the date of the Board hearing, (3) in failing to consider the assistants' regular duties in their totality, and (4) in requiring the district to demonstrate that the assistants' access to confidential information would adversely affect its conduct of labor relations.

To successfully challenge the Board's decision, the district must overcome a heavy burden. Absent compelling indication of error, we will sustain the interpretation of a statute by the administrative body responsible for its execution. *In re Duncan,* 155 Vt. 402, 408, 584 A.2d 1140, 1144 (1990). Determinations concerning the "appropriateness of a bargaining unit" are primarily for the Board; our only inquiry is whether the Board "is operating within its statutory mandate." *Parkway Sch. Dist. v. Local 902/MNEA,* 807 S.W.2d 63, 68 (Mo. 1991); see *In re AFSCME, Local 490,* 153 Vt. 318, 321, 571 A.2d 63, 65 (1989) ("When defining the bargaining unit, the Board need not approve the most appropriate unit, only an appropriate unit."); *Bd. of Educ. of Cmty. Consol. High Sch. Dist. 230 v. Illinois Educ. Labor Relations Bd.,* 518 N.E.2d 713, 727 (Ill. App. Ct. 1987) (great deference is normally accorded to board's establishment of appropriate bargaining unit because such questions are particularly well-suited to board's expertise).

Accordingly, if the record contains factual support for the Board's decision, we will uphold it. *AFSCME, Local 490,* 153 Vt. at 321, 571 A.2d at 65; see *In re Local 1201, AFSCME,* 143 Vt. 512, 517, 469 A.2d 1176, 1180 (1983) (Board is entitled to large measure of discretion in determining whether employee is "confidential employee" and thus exempted from inclusion in collective bargaining unit); *Firefighters, Local #2628 v. Brattleboro Fire Dep't,* 138 Vt. 347, 350, 415 A.2d 243, 245 (1980) (statutory definition of "supervisor" is largely fact-based determination, in which Board is afforded large measure of discretion; Board's decision will be overturned only if shown to be clearly erroneous).

The district first contends that, in this case, as in past cases, the Board conducted a highly mechanical consideration of the evidence without ever discussing whether any of the assistants' access to

particular information could potentially place that employee in a situation involving divided loyalties. According to the district, the Board must consider, and defer to, an employer's claims that an employee's access to certain confidential information could lead to divided loyalties if the employee were allowed to join the union. In the district's view, absent such deference to its concerns, the Board, in effect, infringes upon the district's statutory authority to operate its school system as it sees fit. The district suggests that the Board was bound by the testimony of the administrators that they could not rely on the undivided loyalty of their assistants if those assistants were included in the bargaining unit.

We reject the district's position that the Board must defer to the district's claims of divided loyalties. The Board has the statutory authority to weigh the competing considerations in light of the purposes and provisions of the Municipal Employees Relations Act and to apply its expertise in determining the appropriate bargaining unit. The administrators proffered reasons for excluding their assistants from the bargaining unit, and the association responded to the district's assertions. Notwithstanding the district's claims to the contrary, the Board did address the administrators' concerns by noting either the limited extent of the assistants' access to confidential information or the diluted impact of their access to information that was already known or available to the association. We find no clear error in the Board's weighing of the district's concerns.

In its reply brief, the district acknowledges the open communication between it and the association, but emphasizes that the association is privy neither to the *same* information available to the assistants, nor to all sensitive information at the *same time* it is known to the assistants. The Board considered these contentions and applied its expertise in concluding that, given the district's labor relations practices, the information to which the assistants had access was not of such a nature that inclusion of the assistants in the association would be incompatible with their official duties. Our review of the record in light of the district's contentions does not reveal clear error on the part of the Board in arriving at this conclusion. The district has not provided us with a basis to trump the Board's expertise in this area.

■ The district also argues that the Board erred in this case, as in past cases, by evaluating the assistants' duties solely on the basis of evidence of tasks actually performed as of the date of the Board hearing, as opposed to information regarding what was expected of the assistants. According to the district, in focusing exclusively on how

often particular individuals had done particular types of tasks, the Board ignored both the newness of the district's administrative structure and the legitimate expectations of the positions derived from job descriptions and other evidence.

For the most part, the district fails to explain exactly what the job descriptions and other evidence demonstrates with regard to the expectations concerning the assistants' duties. The district mentions the probability of an increased number of teacher evaluations, but makes no attempt to show how its expectations concerning the assistants' duties would have altered the rationale of the Board in refusing to exclude the assistants from the bargaining unit. As far as we can tell from the record, this is not a situation in which the assistants had not yet assumed additional confidential duties of a different nature from those that they had been doing. In any event, we have noted in a related context that the relevant consideration is the employees' "actual powers, rather than their theoretical authority." *AFSCME, Local 490*, 153 Vt. at 321, 571 A.2d at 65; see *Firefighters of Brattleboro, Local #2628*, 138 Vt. at 351, 415 A.2d at 245 ("The statutory test is whether or not an individual can *effectively exercise* the authority granted him; theoretical or paper power will not make one a supervisor."). We find no error in the Board's consideration of the actual duties performed by the assistants.

■ Next, the district argues that the Board erred by engaging in a fragmented analysis that addressed the separate components of the assistants' duties concerning personnel administration, the budgetary process, and collective bargaining, without considering those duties in their totality. According to the district, if the Board had looked at the assistants' duties in the aggregate, it could not have concluded that they involved only occasional access to confidential matters. We find no merit to this argument. Presumably, the district addressed each of the three areas individually because the statute explicitly refers to those three areas. For the most part, the Board declined to exclude the assistants from the bargaining unit because the evidence indicated that the information to which the assistants had access was not sufficiently confidential to demonstrate that such access would make membership in the association "incompatible" with their official duties. 21 V.S.A. § 1722(6). The Board's analysis would plainly be the same if the three areas were considered together. For the same reason, we reject the district's argument that the Board erred by failing to consider, apart from the special services coordinator's unannounced teacher

observations, whether the assistants' duties involving confidential information could be reassigned.

■ Finally, the district argues that the Board erred by requiring it to demonstrate that the assistants' access to confidential information would adversely affect its conduct of labor relations. Again, we find no error. As noted, the purpose of the Municipal Employee Relations Act, in relevant part, is to prescribe the legitimate rights of both municipal employers and employees, to provide procedures for preventing either side from interfering with the rights of the other, and to protect the rights of individual employees to organize, join employee organizations, and bargain collectively. 21 V.S.A. § 1721. In furtherance of those purposes, the term "confidential employee" is defined, not as any employee having access to confidential information relating to collective bargaining, personnel administration, or budgetary matters, but rather as an employee whose access to such information would make union membership "incompatible" with the employee's duties. *Id.* § 1722(6).

[6] We reject the district's suggestion that the word "incompatible" in this context means nothing more than not working well together, the opposite of the dictionary definition for the word "compatible." Rather, in its proper context, the statutory definition requires the Board to accommodate and balance both the employer's interest in protecting its bargaining position and the employee's interest in bargaining collectively. See *Pennsylvania Labor Relations Bd. v. Altoona Area Sch. Dist.*, 389 A.2d 553, 556 (Pa. 1978) (apparent policy underlying exclusion of confidential employees from bargaining unit is recognition of need to balance right of employees to be represented with right of employer to formulate labor policies with assistance of employees not represented by union with which it deals).

■ "The essential issue is whether the challenged employees have such a close relation to the district's management of labor relations that the district would be prejudiced by their inclusion in a bargaining unit with other employees." *Parkway Sch. Dist.*, 807 S.W.2d at 68; see *Sch. Bd. of Polk County v. Polk Educ. Ass'n*, 480 So. 2d 1360, 1365 (Fla. Dist. Ct. App. 1985) (critical issue is whether clerical employees are privy to confidential information that, if disclosed, would give union unfair advantage at bargaining table). Accordingly, in determining whether an employee acts in a confidential capacity and thus should be excluded from a bargaining unit, both the Board and this Court look for guidance to the federal "labor-nexus test," which excludes only

those employees who act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations. *Local No. 1201, AFSCME,* 143 Vt. at 515, 469 A.2d at 1178; see *Bd. of Educ. of Plainfield Cmty. Consol. Sch. Dist. v. Illinois Educ. Labor Relations Bd.,* 493 N.E.2d 1130, 1136 (Ill. App. Ct. 1986) (National Labor Relations Board has always excluded from bargaining unit employees who receive advance notice of employer's position with respect to labor relations matters, but mere access to confidential information has been rejected by NLRB as basis for exclusion).

The Board, not this Court, is best suited to determine whether the employer may be prejudiced by the inclusion of challenged employees in the union. See *Parkway Sch. Dist.,* 807 S.W.2d at 68 (determination of whether employer may be prejudiced is question that can be effectively decided only by board familiar with employer-employee relations and with dynamics of collective bargaining in public sector). Further, the employer is in the best position to convince the Board that it would be prejudiced if the challenged employees were permitted to join the bargaining unit. See *id.* at 70 (presumption should be in favor of inclusion in bargaining unit). Upon review of the record, and considering the standard of review, we decline to override the Board's decision and impose our own judgment as to whether the duties of the administrative assistants require their exclusion from the bargaining unit. Cf. *Bd. of Educ. of Cmty. Consol. Sch. Dist. No. 230,* 518 N.E.2d at 725-27 (construing term "confidential employees" narrowly and declining to exclude secretaries of school administrators from bargaining unit based on their typing of confidential documents concerning grievances or their access to employee files or statistical information; finding little evidence that secretaries would be privy to advance knowledge of information the premature disclosure of which could affect collective bargaining process or employer-employee labor relations).

*Affirmed.*