

# In the
# Missouri Court of Appeals
# Western District

WEST CENTRAL MISSOURI REGION
LODGE #50 OF THE FRATERNAL
ORDER OF POLICE, ET AL.,

        Respondents,

v.

THE CITY OF GRANDVIEW,
MISSOURI,

        Appellant.

WD77250

OPINION FILED:

January 27, 2015

---

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Sandra Midkiff, Judge**

**Before Division Four: Alok Ahuja, C.J. Presiding,
James Edward Welsh, J., and Tracey Mason-White, Sp. J.**

The City of Grandview appeals the circuit court's grant of summary judgment in favor of

West Central Missouri Region Lodge #50 of the Fraternal Order of Police and its members who

are current or former police officers, sergeants, and civilian members of the Grandview Police

Department.[1]  The circuit court determined that the City's ordinance which established the

---

[1]We collectively refer to West Central Missouri Regional Lodge #50 of the Fraternal Order of Police and its members who are current or former police officers, sergeants, and civilian members of the Grandview Police Department as "Fraternal Order of Police."

collective bargaining framework for personnel in the Grandview Police Department violated article I, section 29 of the Missouri Constitution.[2]

In its appeal, the City asserts eight points on appeal. The City contends that the circuit court erred in ruling that: (1) the City may not enact an ordinance requiring a secret ballot election as the designated method for employees to select a collective bargaining representative, (2) the ordinance was invalid because it did not allow supervisory and non-supervisory employees to be members of the same bargaining unit, (3) the ordinance was unconstitutional because it failed to establish a specialized procedural framework for the resolution of conflicts regarding the composition of collective bargaining units, (4) the Constitution requires the City to allow supervisory and non-supervisory employees to be represented by the same collective bargaining agent, (5) the ordinance was unconstitutional because, for the collective bargaining representative to be elected, it had to receive the votes of a majority of all eligible voters rather than the majority of the votes cast, (6) the ordinance was unconstitutional because it provided

_____

[2]The circuit court's judgment in its declarations mentioned that the City's ordinance violated article I, section 2 (equal protection clause), section 10 (due process clause), and section 29 (collective bargaining clause) of the Missouri Constitution. The Fraternal Order of Police asserts that we should affirm the circuit court's judgment as to seven of the City's points on appeal because those points and arguments focus almost entirely on article I, section 29 of the Missouri Constitution and do not address, identify, or challenge the other two constitutional violations. In its reply brief, the City contends that nothing in its opening brief limits its allegation of error to article I, section 29 and that its points relied on and arguments challenge every basis provided by the circuit court for its entry of summary judgment. The City asserts that, although the circuit court generally declared that the ordinance was unconstitutional under article I, sections 2 and 10 of the Missouri Constitution, the circuit court made such declarations without any analysis or explanation. Thus, rather than addressing the circuit court's bare references to constitutional provisions, the City framed its points relied on and arguments in accordance with the circuit court's substantive explanations for its entry of summary judgment and addressed the ordinance's constitutionality as a general matter. Further, we note that, in its judgment, the circuit court specifically stated that it rejected the Fraternal Order of Police's assertions that the City's ordinance violated the equal protection clause of the Missouri Constitution, but in its declarations it noted generally that the ordinance violated article I, section 2 along with article I, sections 10 and 29 by "requiring that a collective bargaining representative be required to receive more than fifty percent (50%) of votes of all eligible voters, as opposed to more than fifty percent (50%) of the votes cast." This general reference to the equal protection clause is most certainly contradictory to the circuit court's express finding that it was rejecting the Fraternal Order of Police's assertion that the City's ordinance violated the equal protection clause of the Missouri Constitution. We, therefore, decline the Fraternal Order of Police's request that we affirm the circuit court's judgment in regard to seven of the City's points on appeal on the basis that the City failed to address or challenge the other constitutional violations found by the circuit court.

that the City would not pay any union representative for time spent preparing for or engaging in collective bargaining and would not enter into wage commitments that exceeded one year, (7) the ordinance was unconstitutional because the Board of Alderman retained the right to require the modification of the economic terms of any labor agreement in the event of a budget shortfall, and (8) the ordinance was unconstitutional because it gave the Board of Alderman the ability to modify the terms and conditions of employment for employees in the bargaining unit in the event a collective bargaining representative was decertified.

We reverse the circuit court's grant of summary judgment in regard to the circuit court's determination that the ordinance was unconstitutional for all the points stated above, except we make no determination about the constitutionality of the provision in the ordinance requiring that a collective bargaining representative receive more than 50 percent of votes of all eligible voters. We remand to the circuit court with instructions to enter summary judgment in favor of the City concerning those provisions in the ordinance. We also reverse the circuit court's determination that, as a matter of law, an election was not necessary in this case and that the City must immediately recognize the Fraternal Order of Police as the exclusive bargaining representative of the proposed bargaining unit of police officers and sergeants.

The parties submitted cross-motions for summary judgment to the circuit court in this case. In doing so, they stipulated to the following facts.

The Fraternal Order of Police is an incorporated fraternal organization located in Raytown, Missouri, and represents law enforcement officers collectively in matters of employment. Cody Allen, Beau D. Bailey, Brian Bradley, Mike E. Bridges, Paul A. Brooks, Thomas Byrd, Roger L. Denton, Matthew C. Earnest, Bradley Edwards, Scott L. Evans, Gabriel H. Gilbert, Scott Graef, Brandon Grantham, Jacob Gross, David Gutierrez, Mark Hermelink,

3

Richard W. Jones, Gary Kerley, Tiffani Kendrick, Stephen King, Daniel C. Matthews, Gregory J. McCord, Jacob S. Mueller, Jonathan Nicholas, Mary Oliver, Lonnie Pfeifer, Travis Richardson, Will Ridnour, Justin M. Rigot, Greg Smith, Michael D. Spano, Martin Studdard, Douglas Thacker, Ricky Van Sickle, and Alan Walker are current or former police officers of the City of Grandview Police Department. Kris A. Cochran, Danielle Killion, Collier Lunn, Traci Mahlan, and Paula J. Pritchett are current or former civilian members of the City of Grandview Police Department. Henry R. Ellis, Larry Godfrey, Jonathan Going, James Innes, Matthew L. McCall, Gregory Pruitt, Ryan Sharp, and Lorrie Whitehead are current or former police sergeants of the City of Grandview Police Department. All of the above mentioned individuals are currently members of the Fraternal Order of Police, even though the Fraternal Order of Police is not currently recognized as their exclusive bargaining representative for purposes of collective bargaining under the Missouri Constitution. While the duration of their Fraternal Order of Police membership varies, many of the officers, civilian members, and sergeants have been members for over ten years.

The City of Grandview is a fourth-class city in Jackson County duly existing under the laws of the State of Missouri. The City is governed by the Board of Aldermen, whose members are elected by citizens of the City and are tasked with, among other responsibilities, "pass[ing] such laws and ordinances from time to time as shall be deemed necessary and which shall not conflict with the laws of the state[.]" Grandview Municipal Code § 2.20. The City operates a police department, which employs or formerly employed each of the named individuals listed above.

On July 9, 2010, the Fraternal Order of Police demanded to be recognized as the exclusive bargaining agent of all police officers, police sergeants, and police communication

4

officers employed by the City.[3]  In response to the Fraternal Order of Police's request for

collective bargaining, the City prepared a draft ordinance to establish the collective bargaining

framework for personnel in the City's police department.  On September 23, 2010, the City

provided a draft of the proposed ordinance to the Fraternal Order of Police for review and

comment.  On October 11, 2010, the Fraternal Order of Police responded, raising several specific

objections or concerns about the proposed ordinance.  In a letter dated October 11, 2010, the

Fraternal Order of Police requested "an opportunity to address the City in closed or open session

to discuss these issues and answer any questions."  On November 5, 2010, the City provided a

revised draft of the proposed ordinance to the Fraternal Order of Police and stated that the draft

would be presented to the Board of Alderman on November 9, 2010.

On November 9, 2010, the City presented the proposed ordinance to the Board of

Alderman.  A representative of the Fraternal Order of Police, counsel for the Fraternal Order of

Police, and a Grandview Police Department employee representative for the Fraternal Order of

Police attended the meeting.  Although the City did not designate a speaking opportunity for the

Fraternal Order of Police's representatives on the meeting's official agenda, the City did offer a

---

[3]In the circuit court's judgment, the circuit court found that, when the Fraternal Order of Police demanded that the City recognize it as the exclusive bargaining agent on July 9, 2010, the Fraternal Order of Police tendered signature cards, individually signed by every police officer, every sergeant, and a majority of police communication officers, authorizing the Fraternal Order of Police as its exclusive collective bargaining agent.  The letter, dated July 9, 2010, from the Fraternal Order of Police's attorney to the City stated:

> The purpose of this letter is to inform you that the [Fraternal Order of Police] has been requested and authorized in writing by every police officer, every police sergeant, and a majority of police communication officers employed by the Grandview, Missouri Police Department (City/Department) to serve as the exclusive representative of all police officers, police sergeants, and police communication officers (bargaining unit) employed by the City/Department in collective bargaining[.]"

The joint stipulation of facts upon which the parties submitted their cross-motions for summary judgment did not state that the Fraternal Order of Police tendered signature cards with the letter.  Further, at oral arguments, the Fraternal Order of Police conceded that the signature cards were not included with the letter.

general public comment session open to anyone present at the meeting. Prior to beginning the public comment session, the City announced that such comments were limited to approximately five minutes. The representative of the Fraternal Order of Police, Rick Inglima, spoke during the public comment session and primarily commented on the police sergeants' joint representation with police officers and the proposed ordinance's language requiring a labor organization to receive more than fifty percent of the votes of all eligible voters to be recognized as the exclusive bargaining representative for the bargaining unit. Inglima also voiced opposition to the lack of a public hearing before voting on the ordinance. Thereafter, the Board of Alderman, by a vote of five to one, adopted the proposed ordinance as Ordinance No. 6411. The Board of Alderman did not hold an evidentiary hearing or any other type of hearing before voting on the proposed ordinance.

Ordinance No. 6411, entitled as "Provisions for Collective Bargaining with Law Enforcement Personnel," states that its purpose is to provide "a framework within which law enforcement personnel employed by the City of Grandview can exercise their right under Article I, Section 29 of the Constitution of the State of Missouri to bargain collectively with the City, through representatives of their own choosing." Ordinance No. 6411, art. 1, §1.1. The key provisions of the ordinance in dispute in this appeal provide:

(1) "To avoid the division of loyalties and conflicts of interest, supervisory personnel shall not be included within the same bargaining unit as employees they supervise. Further, the same labor organization shall not represent both non-supervisory and supervisory employees within the Police Department. For the purposes of this subsection, Sergeants, Captains, Majors, the Chief of Police, and the Records Unit Supervisor shall be considered supervisory employees." Ordinance No. 6411, art. 2, § 2.2.1.

(2) "The election [of the exclusive bargaining representative] shall be conducted by secret ballot, using such procedure as the Director of Human Resources shall determine are appropriate for ensuring the privacy and security of

6

each employee's vote. Once the poll is closed, the Director of Human Resources shall oversee the counting of the ballots." Ordinance No. 6411, art. 3, § 3.5.

(3) "Any labor organization receiving more than fifty percent (50%) of the votes of all eligible voters shall be designated and recognized by the City as the exclusive bargaining representative for all employees in the bargaining unit." Ordinance No. 6411, art. 3, § 3.5.3.

(4) "The City shall not pay any union representative for time spent participating in collective bargaining or preparing for collective bargaining, except to the extent the person in question is an employee of the City and elects to use accrued paid time off to cover the time so spent." Ordinance No. 6411, art.4, § 4.3.

(5) "After the first agreement between the City and the labor organization is adopted, bargaining for renewal agreements shall take place annually. . . . The parties may elect to bargain non-economic terms for longer periods (e.g. three years or five years), but all economic provisions of the agreement shall be adopted on a year-to-year basis only." Ordinance No. 6411, art. 4, § 4.5.

(6) "In the event of the decertification of the exclusive bargaining representative of the employees in any bargaining unit within the Police Department, all terms and conditions of employment existing at the time of decertification shall remain in place until such time as those terms or conditions of employment are altered by the City's Board of Aldermen." Ordinance No. 6411, art. 3, § 3.6.3.

(7) "In the event of a budget shortfall, the Board of Aldermen shall have the right to require the modification of the economic terms of any labor agreement." Ordinance No. 6411, art. 6, § 6.1.

On dates ranging from March 4, 2011, to March 23, 2011, the police officers, civilian members, and sergeants signed representation cards requesting the City to recognize the Fraternal Order of Police as their "chosen exclusive bargaining representative for the purpose of collective bargaining[.]" The representation cards further stated:

Despite provisions of City Ordinance No. 6411 to the contrary, I direct the City to recognize a single bargaining unit of police officers and police sergeants or, alternatively, to recognize the [Fraternal Order of Police] as the representative of a bargaining unit of police officers of my same rank even if the [Fraternal Order of Police] represents--or is preparing to represent--a bargaining unit of police officers holding a different rank.

7

Upon the Fraternal Order of Police's presentation of the representation cards, the City refused to proceed with an election under those conditions.

Thereafter, the Fraternal Order of Police filed a second amended petition for declaratory judgment and injunctive relief challenging the constitutionality of the City's Ordinance No. 6411. The parties filed cross-motions for summary judgment, and the circuit court granted summary judgment in favor of the Fraternal Order of Police and denied the City of Grandview's motion for summary judgment. Specifically, the circuit concluded that the collective bargaining framework established by the City in Ordinance No. 6411 violated article I, sections 10 and 29 of the Missouri Constitution by:

1. [S]ummarily declaring that Plaintiff Sergeants are supervisory employees and are prohibited from being in the same bargaining unit as Plaintiff Police Officers [and] by failing to provide a fair and impartial forum for full and fair consideration and resolution of conflicts including the summary exclusion of sergeants from the same bargaining unit as police officers.

2. [R]equiring that a collective bargaining representative be required to receive more than fifty percent (50%) of votes of all eligible voters, as opposed to more than fifty (50%) of the votes cast.[4]

3. [P]rohibiting Plaintiff Sergeants and Plaintiff Police Officers from being represented by the same organization in separate bargaining units.

4. [S]ummarily prohibiting collective bargaining representatives employed by [the City] from receiving pay from [the City] for time spent preparing for, and participating in, collective bargaining with [the City].

5. [S]ummarily limiting to a maximum of one year the duration of economic provisions of any labor agreement reached in collective bargaining.

6. [A]uthorizing [the City] to alter the terms of a labor agreement reached in collective bargaining in the event of an organization being decertified as representative.

---

[4]The circuit court stated that this provision of the ordinance also violated article I, section 2 of the Missouri Constitution.

7. [A]uthorizing [the City] to modify the terms of a labor agreement reached in collective bargaining in the event of a budget shortfall.

The circuit court further declared that the City violated article I, section 29 of the Missouri Constitution by:

[N]ot recognizing [the Fraternal Order of Police] as the exclusive bargaining representative of its proposed bargaining units of Plaintiff Police Officers and Plaintiff Sergeants and instead by adopting and enforcing a framework which requires an election, and further in failing to move forward with any election procedure for one combined or two separate bargaining units.

The circuit court, therefore, ordered that the unconstitutional provisions of the ordinance be removed and given no meaning or effect and that the City immediately recognize the Fraternal Order of Police as the exclusive bargaining representative "of the proposed bargaining unit of Plaintiff Police Officer and Sergeants." The City appeals.

Our review of a summary judgment is de novo. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all reasonable inferences. *Id*. "The propriety of summary judgment is purely an issue of law." *Id*. We will affirm the circuit court's grant of summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id*. at 380; Rule 74.04.

Article I, section 29 of the Missouri Constitution provides: "That employees shall have the right to organize and to bargain collectively through representatives of their own choosing." In 2007, the Missouri Supreme Court held in *Independence-National Education Association v. Independence School District*, 223 S.W.3d 131, 139 (2007), that the right to collectively bargain guaranteed by the Missouri Constitution applies to public employees as well as private-sector

9

employees. The Court also recognized that, in the absence of a statute dealing with the collective bargaining process for public employees, the public employer has a role in setting "the framework for these public employees to bargain collectively through representatives of their own choosing."[5] *Id*. at 136. However, the Court emphasized:

> There is nothing in the law, as it has developed, that requires a public entity to agree to a proposal by its employee unions or organizations. In fact, this Court has repeatedly recognized that the public sector labor law allows employers to reject all employee proposals, as long as the employer has met and conferred with employee representatives.

*Id*.

The Missouri Supreme Court provided further clarification of article I, section 29 in *Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 v. City of Chesterfield*, 386 S.W.3d 755 (2012). In *Chesterfield*, a majority of police officers and sergeants in two different cities signed "representation interest cards" supporting the certification of Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 (the union), as their exclusive representative for collective bargaining. *Id*. at 758. Thereafter, the union requested that each city voluntarily recognize the union's representative status and establish a procedural framework for collective bargaining. *Id*. When the cities declined the union's request, the union filed two separate actions for declaratory judgment. *Id*.

The Missouri Supreme Court held:

> The very notion of collective bargaining . . . entails "negotiations between an employer and the representatives of organized employees to determine the conditions of employment[.]" "[T]he point of collective bargaining . . . is to reach

---

[5]"Missouri's public sector labor law, codified in section 105.500, *et seq*., creates a procedural framework for collective bargaining for public employees, but it expressly excludes certain professions, including law enforcement officers[.] Section 105.100." *Am. Federation of Teachers v. Ledbetter*, 387 S.W.3d 360, 363 (Mo. banc 2012). "When a procedural framework for bargaining is not codified, i.e., for excluded employees, the lack of a framework does not excuse the public employer from its constitutional duty to bargain collectively with public employees." *Id*. (citing *Independence*, 223 S.W.3d at 136).

an agreement." Therefore, an employer of statutorily excluded employees has a duty to bargain collectively with those employees, and, when necessary, adopt procedures to participate in that process. The absence of such a duty would render meaningless the rights guaranteed to public employees under article 1, section 29.

*Id*. at 760 (citations omitted). The *Chesterfield* court emphasized, however, that "[e]ach city has the ability to establish a procedural framework for collective bargaining with its excluded employees if necessary to effectuate its duty." *Id*. at 758. The Court declared, "If it is unnecessary for the cities to pass an ordinance to carry out their constitutional duty to bargain collectively, then there is no reason to order the cities to do so." *Id*. at 763. The *Chesterfield* court concluded that the trial courts below erred "in requiring the cities to establish a procedure for a meet and confer process rather than simply ordering them to meet and confer with the union, allowing the cities, on their own, to make whatever arrangements are necessary to carry out that order." *Id*. at 763-64. Moreover, the *Chesterfield* court, found that, because an undisputed majority of the employees had chosen the union as their exclusive bargaining representative, the trial courts erred "in ordering the cities to organize an election to designate the union as the exclusive bargaining representative." *Id*. at 764. The Court noted that, because the election process was not challenged, the election was not an issue, and, therefore, the trial court should not have ordered the cities to organize an election. *Id*.

In our case, the circuit court concluded, relying on the *Chesterfield*, that an election was not necessary to recognize the Fraternal Order of Police as the exclusive bargaining representative. In so concluding, the circuit court stated:

> The facts appear undisputed that pursuant to Article 3.1 of the Collective Bargaining Framework, Plaintiff [Fraternal Order of Police] provided to the Defendant City cards containing the signatures of all Plaintiff Officers and all Plaintiff Sergeants indicating that they wish to select Plaintiff [Fraternal Order of Police] as their exclusive bargaining representative for collective bargaining. . . .

11

The City refused to proceed with either an election or recognition of the [Fraternal Order of Police] as bargaining representative for all or either of the groups of police officers.

　　　*Under these factual circumstances*, it is clear that no election is necessary. In the *City of Chesterfield* case, the Supreme Court held that the City could not be required to establish an election framework because there was no need for an election to certify the union in that case. . . . *Given the facts of this case*, the unanimity of Police Officer and Police Sergeants in selecting the [Fraternal Order of Police] as their bargaining representative, there is no need for an election.[6]

In finding that no election was necessary in this case, there is confusion on whether the circuit court was relying on the July 9, 2010, letter from the Fraternal Order of Police, where in the Fraternal Order of Police demanded to be recognized as the exclusive bargaining agent of all police officers, police sergeants, and police communication officers employed by the City. The letter, dated July 9, 2010, said:

　　　The purpose of this letter is to inform you that the [Fraternal Order of Police] has been requested and authorized in writing by every police officer, every police sergeant, and a majority of police communication officers employed by the Grandview, Missouri Police Department (City/Department) to serve as the exclusive representative of all police officers, police sergeants, and police communication officers (bargaining unit) employed by the City/Department in collective bargaining[.]"

The circuit court found, apparently on the basis of this letter, that the Fraternal Order of Police tendered signature cards authorizing the Fraternal Order of Police as its exclusive collective bargaining agent, individually signed by every police officer, every sergeant, and a majority of police communication officers. In particular, the circuit court found:

　　　Plaintiff [Fraternal Order of Police] demanded that the City of Grandview recognize it as the exclusive bargaining agent for all police officers, police sergeants and police communication officers employed by the City on July 9, 2010. The [Fraternal Order of Police] tendered signature cards authorizing the [Fraternal Order of Police] as its exclusive bargaining agent, individually signed

---

　　　[6]We added the emphasis.

12

by every police officer, every sergeant and a majority of police communication officers.

The joint stipulation of facts upon which the parties submitted their cross-motions for summary judgment, however, did not state that the Fraternal Order of Police tendered signature cards with the letter. The parties merely stipulated that "Plaintiff [Fraternal Order of Police], through its attorney, demanded to be recognized as the exclusive bargaining agent of all police officer, police sergeants, and police communications officers employed by the City on July 9, 2010." Thus, the circuit court could not have found on the basis of the stipulation of facts that, as of July 9, 2010, that the Fraternal Order of Police had tendered signature cards authorizing the Fraternal Order of Police as its exclusive collective bargaining agent.[7] This is significant because the City adopted its ordinance after it received the July 9, 2010, letter.

In *Chesterfield*, the Missouri Supreme Court concluded that an election was unnecessary because an undisputed majority of the employees had chosen the union as their exclusive bargaining representative, and therefore the trial courts erred in ordering the cities to "*organize an election*" to designate the union as the exclusive bargaining representative." 386 S.W.3d at 764. Moreover, the *Chesterfield* court held that the courts may require a city to meet and confer to carry out their constitutional duty to bargain collectively but that the court cannot require a city to establish a procedure for the collective bargaining framework. *Id*. at 763-64. The facts and circumstances of this case, however, are not like *Chesterfield*. In this case, prior to "an undisputed majority of the employees" choosing the Fraternal Order of Police as their exclusive collective bargaining representative, the City established a framework to collectively bargain with the police officers, civilian members, and sergeants.

_____

[7]Indeed, at oral argument on this matter, the Fraternal Order of Police conceded that it did not tender signature cards with the July 9, 2010, letter.

13

Although the Fraternal Order of Police did eventually submit signed cards from the police officers, civilian members, and sergeants demanding that the City recognize the Fraternal Order of Police as their "chosen exclusive bargaining representative for the purpose of collective bargaining," these cards were submitted after the City adopted Ordinance No. 6411 and established the collective bargaining framework. The police officers, sergeants, and civilian members demanded that, "[d]espite provisions of City Ordinance No. 6411 to the contrary," that the City recognize them as "a single bargaining unit" or as separate bargaining units but both being represented by the Fraternal Order of Police. Upon the Fraternal Order of Police's presentation of the representation cards, the City refused to proceed with an election under the conditions that were contrary to its ordinance.

The Missouri Supreme Court has recognized that, in the absence of a statute dealing with the collective bargaining process for public employees, the public employer has a role in setting "the framework for these public employees to bargain collectively through representatives of their own choosing." *Independence*, 223 S.W.3d at 136. Indeed, "[e]ach city has the ability to establish a procedural framework for collective bargaining with its excluded employees if necessary to effectuate its duty" to bargain collectively with the exclusive bargaining representative elected by the employees. *Chesterfield*, 386 S.W.3d at 758. The ordinance adopted by the City in this case provided the collective bargaining framework, and, although the City was not required to adopt an ordinance to establish the framework, *see id*. at 763, it most certainly was the City's prerogative to do so. Given that the stipulated facts merely supported that, prior to the adoption of the ordinance, the Fraternal Order of Police demanded to be recognized as the exclusive bargaining representative, the circuit court erred in concluding, on the basis of *Chesterfield*, that as a matter of law an election was not necessary in this case and

14

further erred in ruling that the City should "immediately recognize the Fraternal Order of Police as the exclusive bargaining representative of the proposed bargaining unit of Plaintiff Police Officers and Sergeants."

We note that, in its first point relied on, the City asserts that the circuit court erred in ruling that the City may not enact an ordinance requiring a secret ballot election as the designated method for employees to select a collective bargaining representative. The circuit court, however, made no such ruling. The circuit court instead held that, under the facts of this case, no election was necessary. But, as we have already discussed, the facts of this case did not demonstrate that an election was unnecessary. Indeed, the facts of this case demonstrate that the City had the right to enact its own framework for collective bargaining in the absence of state legislative action, and nothing within the Missouri Constitution or case law would prohibit the City from mandating that employees act through a secret ballot election to designate a collective bargaining representative.

The framework enacted by the City adopted a secret-ballot election as the sole means of determining whether employees wished to have collective representation. The Fraternal Order of Police's demand to be recognized based on the presentation of signature cards was inconsistent with the procedure adopted by the City's ordinance. The Fraternal Order of Police makes no argument, other than by its reliance on *Chesterfield*, to suggest that Article I, section 29 *requires* recognition of a labor union based on signature cards, when the relevant legal framework adopts a different election method. We reject the Fraternal Order of Police's first point.

The true issue in this case, and the question presented to the circuit court in the declaratory judgment action, is whether the collective bargaining framework provided by the

15

City in Ordinance No. 6411 is constitutional. When dealing with a constitutional attack on a legislative enactment, we are guided by the established principle:

> "The state constitution, unlike the federal constitution, is not a grant of power, but as to legislative power, it is only a limitation; and, therefore, except for the restrictions imposed by the state constitution, the power of the state legislature is unlimited and practically absolute. An act of the legislature is presumed to be valid and will not be declared unconstitutional unless it clearly and undoubtedly contravenes some constitutional provision. Legislative enactments should be recognized and enforced by the courts as embodying the will of the people unless they are plainly and palpably a violation of the fundamental law of the constitution."

*Americans United v. Rogers*, 538 S.W.2d 711, 716 (Mo. banc 1976) (citations omitted). This same principle is equally applicable in evaluating the constitutionality of city ordinances. *St. Louis Univ. v. Masonic Temple Ass'n of St. Louis*, 220 S.W.3d 721, 725 (Mo. banc 2007). There is a presumption that local government ordinances are constitutional. *City of Pagedale v. Murphy*, 142 S.W.3d 775, 778 (Mo. App. 2004).

We, therefore, must presume that the City's ordinance in this case is valid unless it clearly and undoubtedly contravenes some constitutional provision. In this case, the City asserts seven points of error where it contends that the circuit court erroneously declared that as a matter of law the City's ordinance was unconstitutional. In particular, the City complains about each of these declarations by the circuit court that Ordinance No. 6411 violated the constitution by:

1. [S]ummarily declaring that Plaintiff Sergeants are supervisory employees and are prohibited from being in the same bargaining unit as Plaintiff Police Officers [and] by failing to provide a fair and impartial forum for full and fair consideration and resolution of conflicts including the summary exclusion of sergeants from the same bargaining unit as police officers.

2. [R]equiring that a collective bargaining representative be required to receive more than fifty percent (50%) of votes of all eligible voters, as opposed to more than fifty (50%) of the votes cast.

16

3.  [P]rohibiting Plaintiff Sergeants and Plaintiff Police Officers from being represented by the same organization in separate bargaining units.

4.  [S]ummarily prohibiting collective bargaining representatives employed by [the City] from receiving pay from [the City] for time spent preparing for, and participating in, collective bargaining with [the City].

5.  [S]ummarily limiting to a maximum of one year the duration of economic provisions of any labor agreement reached in collective bargaining.

6.  [A]uthorizing [the City] to alter the terms of a labor agreement reached in collective bargaining in the event of an organization being decertified as representative.

7.  [A]uthorizing [the City] to modify the terms of a labor agreement reached in collective bargaining in the event of a budget shortfall.

Again, the constitutional provision at issue in this case provides:  "That employees shall have the right to organize and to bargain collectively through representatives of their own choosing."  Mo. Const. art. I, sec. 29.  Ordinance No. 6411, article 2, section 2.2.1 provides:

To avoid the division of loyalties and conflicts of interest, supervisory personnel shall not be included within the same bargaining unit as employees they supervise.  Further, the same labor organization shall not represent both non-supervisory and supervisory employees within the Police Department.  For the purposes of this subsection, Sergeants, Captains, Majors, the Chief of Police, and the Records Unit Supervisor shall be considered supervisory employees.

At first blush, it would seem that this provision of Ordinance No. 6411 may conflict with the constitutional right of employees to organize and to bargain collectively through representatives of their own choosing.  This issue, however, has been decided by the courts in the realm of the Missouri public sector labor law, sections 105.500 et seq., RSMo 2000, which necessarily must also comply with article I, section 29 of the Missouri Constitution.

Section 105.510, RSMo 2000, of the Missouri public sector labor law provides:

Employees, except police, deputy sheriffs, Missouri state highway patrolmen, Missouri National Guard, all teachers of all Missouri schools, colleges and universities, of any public body shall have the right to form and join labor

17

organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing.

The Missouri Supreme Court in construing the meaning of this provision stated:

> Although § 105.510, RSMo 1978, uses the word "employees" without additional specificity in describing the composition of a bargaining unit, the legislature did not intend for all persons on the public payroll to be considered employees for bargaining purposes. *See City of Columbia Missouri v. Missouri State Board of Mediation*, 605 S.W.2d 192, 194 (Mo. App. 1980); *Golden Valley Memorial Hospital District v. Missouri State Board of Mediation*, 559 S.W.2d 581, 583 (Mo. App. 1977). In the course of labor relations, someone must act on behalf of the public employer and it is the responsibility of the Board to exclude from an otherwise appropriate bargaining unit "those employees, if any, whose duties involve acting directly or indirectly in the interest of the employer in relation to other employees." *Golden Valley Memorial Hospital District*, 559 S.W.2d at 583.

*Mo. Nat'l Educ. Ass'n v. Mo. State Bd. of Mediation*, 695 S.W.2d 894, 897 (Mo. banc 1985); *see also Germann v. City of Kansas City*, 577 S.W.2d 54, 56-57 (Mo. App. 1978) (city's ordinance prohibiting fire battalion chiefs from being in the same union as firefighters under their supervision did not violate section 105.510 of the Missouri public sector labor law and did not violate the First Amendment of the United States Constitution); *Golden Valley Mem'l Hosp. Dist.*, 559 S.W.2d at 583 (the Board of Mediation has the duty to identify employees whose duties involve acting directly or indirectly in the interest of the employer in relation to other employees and such employees shall be excluded from the bargaining unit).

The Court in *Missouri National Education Association* concluded that "managerial" employees and "confidential" employees are employees "whose duties involve acting directly or indirectly in the interest of the employer in relation to other employees" and that such employees "are excluded from the bargaining unit either because their inclusion could create conflicts of

18

interest in the performance of their duties or because they lack sufficient community of interest with other workers." 695 S.W.2d at 898.[8] In so concluding, the Court stated:

> We believe that in enacting § 105.510, RSMo 1978, the legislature did not intend that management should "be required to handle labor relations matters through employees who are represented by the union with which the company is required to deal and who in the normal performance of their duties may obtain advance information of the company's position with regard to contract negotiations, the disposition of grievances, or other labor relations matters."

*Id*. at 900-01 (citation omitted). Thus, the Court held that twelve secretaries employed by the Belton, Missouri School District were confidential employees, were not employees within the meaning of section 105.510 of the Missouri public sector labor law, and should be excluded from the bargaining unit consisting of all clerical employees, teacher aides, and school nurses employed by the school district. *Id*. at 901.[9]

Like the Missouri public sector labor law, the Missouri Constitution does not define employees and sets no boundaries on the types of employees that may be included in a collective bargaining unit. Thus, because "someone must act on behalf of the public employer," it is appropriate for the City in this case to "exclude from an otherwise appropriate bargaining unit" supervisory employees "'whose duties involve acting directly or indirectly in the interest of the

---

[8]In *Parkway School Dist. v. Parkway Ass'n of Educ*., 807 S.W.2d 63 (Mo. banc 1991), the Missouri Supreme Court emphasized that in *Mo. Nat'l Educ. Ass'n*, 695 S.W.2d at 899, it "recognized the breadth of the [school] board's discretion in implementing statutory policy" and that the school board had the freedom to modify or discard the guidelines if they proved unworkable. *Parkway*, 807 S.W.2d at 67. In *Parkway*, the school district found the "confidentiality test" impracticable and returned to the "labor nexus test" in determining the parameters of a bargaining unit. *Id*. at 68. The *Parkway* court held: "Determinations about the standards of appropriateness of a bargaining unit are primarily for the board. Our only inquiry is as to whether it is operating within its statutory mandate. Just as we did in [*Mo. Nat'l Educ. Ass'n*], we give great deference to the board's policy determinations." *Id*.

[9]In so concluding, we are assured that the Missouri Supreme Court issued its opinion with full knowledge of article I, section 29 of the Missouri Constitution because the dissenting opinion by Judge Charles Blackmar stated in his opening paragraph of his dissent: "The denial to the twelve secretarial employees of the very limited collective bargaining rights afforded by §§ 105.500 through 105.530, RSMo 1978, is contrary to the policy of the Missouri Constitution, Art. I, Sec. 29, and to the policy of the governing statute." *Id*. at 901.

19

employer in relation to other employees.'" *Id*. at 897 (citation omitted). Excluding supervisory employees from a particular bargaining unit does not deny those employees any collective bargaining rights.[10] It merely allows the City to manage its work force and to exercise its discretion in legislating the collective bargaining framework as authorized in by the Missouri Supreme Court in *Independence*, 223 S.W.3d at 136, and *Chesterfield*, 386 S.W.3d at 758.

The circuit court found that the City violated article I, section 29 of the Missouri Constitution "by summarily declaring that Plaintiff Sergeants are supervisory employees" and "by failing to provide a fair and impartial forum for the full and fair consideration and resolution of conflicts including the summary exclusion of sergeants from the same bargaining unit as police officer." In its argument, the Fraternal Order of Police emphasizes that the City enacted its ordinance "without holding a hearing of any kind to determine the appropriateness or inappropriateness of [the] proposed bargaining unit."

The parties stipulated that:

> Police sergeants employed by the City's police department are the highest ranking members of the police force on duty from the hours of 5:00 p.m. until 8:00 a.m. on weekdays, and at all times on weekends and holidays. During these times, higher ranking officers are equipped with Department-issued cellular telephones and take-home cars so they can be contacted and promptly return to duty, if an incident described in the . . . Command Staff Notifications occurs or if otherwise necessary under the circumstances.

---

[10]The parties stipulated that several local jurisdictions currently recognize a single bargaining unit of police department employees which contains both sergeants and officers, including: Kansas City, Missouri; Kansas City, Kansas; Independence; St. Joseph; Buchanan County; Liberty; Jackson County; Claycomo; and Richmond. They also stipulated that Lee's Summit recognizes sergeants and officers in two separate bargaining units but recognize a single labor union as the collective bargaining representative for both bargaining units. Further, the parties stipulated that the City currently recognizes a single bargaining unit comprised of all firefighters and captains with the City's Fire Department and recognizes a single labor organization as the collective bargaining representative for that multi-rank bargaining unit. Finally, the parties stipulated that the City has never raised any objection of any kind to its police officers and police sergeants maintaining membership in the Fraternal Order of Police and that the City has never issued any disciplinary action indicating that a sergeants membership in the Fraternal Order of Police has caused divided loyalty or conflicts of interest in the performance of their job duties. None of these stipulations establish the unconstitutionality of the City's ordinance.

20

The ordinance states that "Sergeants, Captains, Majors, the Chief of Police, and the Records Unit Supervisor shall be considered supervisory employees." Ordinance No. 6411, art. 2, § 2.2.1. The stipulation establishes that, from "5:00 p.m. until 8:00 a.m. on weekdays, and at all times on weekends and holidays," sergeants are the highest ranking members of the police force on duty.

In its judgment, the circuit court stated:

> The City has created a controversy as to what is the appropriate bargaining unit by summarily declaring that the position of sergeant is a supervisory position. Therefore, there must be a procedural forum established for the full and fair hearing and resolution of this conflict. The hearing must afford the opportunity to confront, the opportunity to present evidence, and to be heard in a full and impartial forum. The Court finds that Ordinance No. 6411 is defective in its failure to provide a procedure and forum for resolution of controversies including its designation of sergeant as supervisory position, in violation of Article I, Sections 10 and 29.

We find nothing in the Missouri Constitution that requires the City to create a procedural forum to make determinations about the scope of appropriate bargaining units within the City's police department.

The Fraternal Order of Police asserts that the primary purpose of a collective bargaining framework is to protect the right of employees to bargain in large but appropriate bargaining units by requiring an evidentiary forum prior to modification of the unit proposed by employees. In support of this contention, the Fraternal Order of Police cites *Central County Emergency 911 v. International Association of Firefighters Local 2665*, 967 S.W.2d 696, 700 (Mo. App. 1998), which dealt with the issue of whether shift supervisors of a fire and emergency dispatching center were supervisory employees. In deciding this issue, the court noted:

> The Public Sector Labor Law authorizes employees of any public body, with certain exceptions, to form and join labor organizations for the purpose of collective bargaining. §§ 105.500-.530, RSMo 1994. The State Board of Mediation by this statute is empowered to resolve issues as to the appropriateness of bargaining units and majority representative status. § 105.525, RSMo 1994.

21

> One of the primary purposes of the statute is to provide a forum to decide if the bargaining unit proposed by the employees is acceptably constituted. *City of Columbia* [*v. Mo. State Bd. of Mediation*, 605 S.W.2d 192, 194 (Mo. App. 1980)]. The Board must decide, in appropriate cases, the status of supervisory personnel and whether they are properly included in the employee bargaining unit because they are employee orientated in job function. *Id.*

*Cent. Cnty. Emergency 911*, 967 S.W.2d at 700. That the public sector labor law provides a forum "to decide if the bargaining unit proposed by the employees is acceptably constituted," *id.*, does not mean that it is constitutionally required.

Notably, the Fraternal Order of Police does not contend that the exclusion of "supervisory" employees from a bargaining unit violates article I, section 29. Nor has it argued in this lawsuit that the designation of sergeants as "supervisory" employees was erroneous given their responsibilities and the legal standards governing the determination whether particular employees are "supervisory." If the union believes that the ordinance improperly designates sergeants as "supervisory," and in the absence of any other procedural mechanism to challenge that designation, the union may file suit in circuit court to challenge the designation. *Cf. Chesterfield*, 386 S.W.3d at 764 n.7 (in the absence of any statutory mechanism for employer to challenge union's selection as bargaining representative, employer could file suit in circuit court to litigate the issue). Nothing in the constitution, however, requires the City to establish any other procedural forum for litigation of the union's challenge to the "supervisory" designation.

Indeed, in holding that the City's ordinance should have included a procedural forum for making determinations about the scope of appropriate bargaining units, the circuit court invaded the Board of Alderman's legislative province, in violation of the separation of powers provision contained in article II, section 1 of the Missouri Constitution. As the Missouri Supreme Court held in *Chesterfield*, courts cannot require a city to establish a procedure for the collective

22

bargaining framework. 386 S.W.3d at 763-64. Thus, the circuit court is not authorized to mandate that the City "provide a procedure and forum for resolution of controversies" in its collective bargaining framework. The circuit court's authority is limited to determining whether the provisions the Board of Alderman included in the ordinance violated the constitution, and, as, noted above, it is well-established that supervisory employees may be excluded from a unit containing non-supervisory employees.

In addition to prohibiting supervisory personnel from being in the same bargaining unit as employees they supervise, the City's ordinance also prohibited the same labor organization from representing both non-supervisory and supervisory employees within the Police Department. The circuit court found that this provision violated article I, section 29 of the Missouri Constitution because it prohibited sergeants and police officers "from being represented by the same organization in separate bargaining units." In essence, the circuit court effectively read article I, section 29 to say that employees must be allowed to select any representative they wish and that no restrictions whatsoever may be placed on the selection of the employee's collective bargaining representative.

As this court declared in *Dagraffenreid v. State Bd. of Mediation*, 379 S.W.3d 171, 179 (Mo. App. 2012), the likely concern of article I, section 29 "is that there would be no unreasonable or arbitrary barriers erected to the right of workers to establish collective bargaining with their employers." The City's ordinance allows sergeants, police officers, and civilian members to choose a collective bargaining representative. The ordinance merely prohibits the same collective bargaining agent from representing both non-supervisory and supervisory employees. We find nothing arbitrary or unreasonable about the ordinance's limitation. The same concerns exist with having the same collective bargaining agent represent

23

both non-supervisory and supervisory employees as exist with having non-supervisory and supervisory employees included within the same collective bargaining unit. The collective bargaining representative would be representing the City's non-supervisory employees while also representing supervisory employees "'whose duties involve acting directly or indirectly in the interest of the employer in relation to other employees[.]'" *Mo. Nat'l Educ. Ass'n*, 695 S.W.2d at 898; *see also Germann,* 577 S.W.2d at 56 (court held "prohibition of battalion chiefs from holding membership in the same union as the firefighters they supervise serves a legitimate state interest and the restriction of their First Amendment rights is the least drastic restriction to accomplish this purpose").

Article I, section 29 of the Missouri Constitution requires that employees be allowed to select a collective bargaining representative, not that they be permitted to choose from absolutely any conceivable representative without any limits. The enactment of a reasonable limitation by the City does not prevent the supervisory employees from selecting a "representative of their own choosing" within the meaning of article I, section 29 of the Missouri Constitution.

Thus, the circuit court erred when it declared, as a matter of law, that the City's ordinance was unconstitutional because it did not allow sergeants to be members of the same bargaining unit as police officers and civilian members, failed to establish a specialized procedural framework for the resolution of conflicts regarding the composition of collective bargaining units, and did not allow supervisory and non-supervisory employees to be represented by the same collective bargaining agent.[11]

---

[11]This court expresses no opinion on the propriety of the City's decision to classify the police sergeants as supervisory personnel. On the facts as stipulated, it may or may not be an appropriate classification.

24

The circuit court also declared that the ordinance was unconstitutional because it required a collective bargaining representative receive the votes of a majority of all eligible voters in a bargaining unit rather than the majority of the votes cast, provided that the City would not pay any union representative for time spent preparing for or engaging in collective bargaining, provided that the City would not enter into wage commitments that exceeded one year, provided that the Board of Alderman retained the right to required the modification of the economic terms of a labor agreement in the event of a budget shortfall, and provided that the Board of Alderman retains the ability to modify the terms and conditions of employment for employees in a bargaining unit in the event the collective bargaining representative was decertified. As previously noted, the Missouri Supreme Court has explicitly acknowledged that public legislative bodies have the constitutional authority to establish collective bargaining frameworks for employees not covered by the Missouri public sector labor law. *Independence*, 223 S.W.3d at 136.

We need not, however, decide the constitutionality of the City's framework which required that a labor organization receive more than 50 percent of the votes of all eligible voters to be designated and recognized by the City as the exclusive bargaining representative for all employees in the bargaining unit. It is apparent from the record that the number of police officers, sergeants, and civilian employees desiring to have the Fraternal Order of Police be their exclusive collective bargaining agent would exceed an absolute majority.[12] Under the facts of this case, regardless of whether an election would require a simple majority or an absolute

_____

[12] The parties stipulated that: "The rank structure (and number of positions within that rank) currently employed within the City's police department consists of: 1 Chief of Police; 1 Deputy Chief of Police; 1 Major; 1 Captain; 9 Sergeants; 41 Sworn Officers; and 18 civilian support employees (includes both full-time and part-time)." There are 8 named sergeants, 35 named officers, and 5 named civilian employees as plaintiffs in this case. The representation cards presented to the City on April 25, 2011, were signed by 9 sergeants, 37 police officers, and 4 civilian employees.

25

majority, it would result in the approval of a collective bargaining agent. In a declaratory judgment action, the courts will not "'adjudicate hypothetical or speculative situations that may never come to pass.'" *Schweich v. Nixon*, 408 S.W.3d 769, 778 (Mo. banc 2013) (quoting *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. banc 2003)). Moreover, courts "'will avoid the decision of a constitutional question if the case can be fully determined without reaching it.'" *Winfrey v. State*, 242 S.W.3d 723, 724 n.2 (Mo. banc 2008) (quoting *State ex rel. Union Elec. Co. v. Pub. Serv. Comm'n*, 687 S.W.2d 162, 165 (Mo. banc 1985)).

The City also established in its framework for collective bargaining that it would "not pay any union representative for time spent participating in collective bargaining or preparing for collective bargaining" and that it would bargain with employees on "economic provisions of the agreement" on a year-to-year basis only. Ordinance No. 6411, art. 4, §§ 4.3 and 4.5. The Fraternal Order of Police does not argue that the Missouri Constitution requires the City to pay its employees for the time spent participating or preparing in collective bargaining. Instead, the Fraternal Order of Police argues that compensation for collective bargaining is a mandatory subject of negotiation between the City and the officers' designated collective bargaining representative. We, however, see nothing in the ordinance which prevents the City from negotiating with a labor union over whether union representatives should be compensated for collective bargaining activities. The mere fact that some issue is initially addressed in an ordinance providing a framework for negotiations does not mean that the City would be unwilling to negotiate over a change to that ordinance. Many of the City's existing terms and conditions of employment for police officers may be contained in ordinances; to the extent an eventual collective bargaining agreement adopted different terms and conditions, the existing ordinance could be amended.

26

The same is true of the limitations in the ordinance restricting the economic terms of any labor agreement to a one year term (Ordinance No. 6411, art. 4, § 4.5), allowing the Board of Alderman to retain the right to modify the economic terms of any labor agreement in the event of a budget shortfall[13] (Ordinance No. 6411, art. 6 § 6.1), and allowing the Board of Alderman to retain the ability to modify the terms and conditions of employment for employees in a bargaining unit in the event a collective bargaining representative is decertified[14] (Ordinance No. 6411, art. 3, § 3.6.3). Nothing in the ordinance prevents the City from negotiating with a labor union over these limitations. The mere fact that some issue is initially addressed in an ordinance providing a framework for negotiations does not mean that the City would be unwilling to negotiate over a change to that ordinance.

Indeed, the collective bargaining has not even begun between the City and the Fraternal Order of Police. The City has enacted its framework, but it has not refused to meet and confer with the Fraternal Order of Police on any of these issues. The City may be "showing its hand" to the Fraternal Order of Police regarding its stance on certain issues, but nothing within the ordinance itself takes the issues off of the table during the bargaining process. The constitution requires that an employer "meet and confer" with a collective bargaining representative and engage in the bargaining process in good faith. *Am. Federation of Teachers v. Ledbetter*, 387

[13]We note, however, that the Missouri Supreme Court has stated that labor contracts between individual employees and governmental bodies cannot be changed unilaterally, even if the agreed upon labor proposal was adopted by the employer through an ordinance that could be changed by the public body at anytime. *Independence*, 223 S.W.3d at 139.

[14]As noted *supra* in note 13, labor contracts between individual employees and governmental bodies cannot be changed unilaterally. *Independence*, 223 S.W.3d at 139. Indeed, "[a]lthough a collective-bargaining agreement with a decertified union becomes null and void upon a change in bargaining representative, the employer must abide by the terms and conditions of employment established under that agreement until a new collective-bargaining agreement is negotiated or the parties reach impasse." *Children's Hosp. and Research Center of Oakland*, 360 NLRB No. 56, note 1 (February 28, 2014).

S.W.3d 360, 367 (Mo. banc 2012). Besides these parameters, the Missouri Constitution does not impose any other affirmative duties upon a public employer. No requirements exists in the constitution that the parties must reach an agreement. Indeed, an impasse may be the result of good faith bargaining. Moreover, in the absence of a statute dealing with the collective bargaining process for public employees, the legislative body has the authority "to set the framework for these public employees to bargain collectively through representatives of their own choosing." *Independence,* 223 S.W.3d at 136. Thus, the establishment of a collective bargaining framework is for the legislative bodies and not the courts. To the extent that the City may in the future refuse to negotiate concerning any of the terms addressed in the ordinance, the Fraternal Order of Police may challenge the City's refusal at that time, if it believes that the refusal violates the duty of a public employer to negotiate in good faith as recognized in *Ledbetter.* 387 S.W.3d at 367. Enactment of the ordinance itself, however, does not necessarily presage a future refusal to negotiate in good faith.

Consistent with this legislative authority, the City enacted Ordinance No. 6411. Indeed, the Missouri Supreme Court *in Chesterfield* instructed:

> "[T]he point of collective bargaining, of course, is to reach an agreement." Therefore, an employer of statutorily excluded employees has a duty to bargain collectively with those employees and, when necessary, adopt procedures to participate in that process. The absence of such a duty would render meaningless the rights guaranteed to public employees under article I, section 29.
>
> Because the police officers and sergeants are excluded from Missouri's public sector labor law, the cities may create their own procedures when necessary, so long as they satisfy the constitutional requirements.

386 S.W.3d at 760 (citations omitted). The City of Grandview did just this, and its enactment of Ordinance No. 6411 is a valid exercise of the City's legislative authority.

28

Beyond the affirmative duties to "meet and confer" and to do so in good faith as declared by the Missouri Supreme Court in *Ledbetter*, 387 S.W.3d at 367, we find nothing in article I, section 29 of the Missouri Constitution that prohibits the City from establishing the framework it provided in Ordinance No. 6411.[15]  It is for the City to decide, as a matter of policy, when and how they desire to meet and confer to collectively bargain with their employees.  As long as they "meet and confer" and do so in good faith, the City has met its constitutional duties under article I, section 29 of the Missouri Constitution.  Although a court may "read a constitutional provision broadly, it cannot ascribe to it a meaning that is contrary to that clearly intended by the drafters."  *Farmer v. Kinder*, 89 S.W.3d 447, 452 (Mo. banc 2002).  "[T]here is . . . . no authority for [a] Court to read into the Constitution words that are not there."  *Independence*, 223 S.W.3d at 137.  Article I, section 29 of the Missouri Constitution serves only to guarantee the right of employees to organize and to bargain collectively through representatives of their own choosing.  The Missouri Supreme Court declared in *Quinn v. Buchanan*, 298 S.W.2d 413, 417 (Mo. banc 1957),[16] that the purpose of article I, section 29 of the Missouri Constitution "'was to declare that such rights of collective bargaining were established in this state.  It means that employees have the right to organize and function for a special purpose:  namely, for the purpose of collective bargaining.'"  The *Quinn* court, however, stated, "Sec. 29, Art. I is not a labor relations act, specifying rights, duties, practices and obligations of employers and labor organizations[.]"  *Id.* at 418.  The provisions of the ordinance noted above that the circuit court declared

---

[15]The City may well have gone beyond establishing the procedural framework for negotiations by setting forth its initial positions on a variety of anticipated issue but that does not make the framework established constitutionally infirm.  By the same token, the Fraternal Order of Police wishes to avoid negotiating with the City over many of these same issues by arguing that they are constitutionally entitled to prevail.

[16]The Missouri Supreme Court overruled *Quinn* in *Chesterfield* but only to the extent that *Quinn* held that article I, section 29 of the Missouri Constitution did not impose any affirmative duty on employers to bargain collectively.  *Chesterfield*, 386 S.W.3d at 760-62.

unconstitutional in this case do not in any way violate the employees' right to organize and to bargain collectively.

As part of the judicial branch, the circuit court's authority in this case was limited to determining whether the ordinance violated article I, section 29 of the Missouri Constitution. The circuit court's declarations regarding the City's ordinance, however, crossed the line from adjudication to legislation. As such, the circuit court's declarations violated the separation of powers provision embodied in article II, section 1 of the Missouri Constitution. Article II, section 1, provides:

> The powers of government shall be divided into three distinct departments--the legislative, executive and judicial--each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

The circuit court engaged in legislative functions by imposing obligations on the City not found in the plain language of article I, section 29.

The circuit court, in essence, was making policy determinations about what it believed should be required in the collective bargaining process with the City. Implementation of policy, however, is solely the prerogative of the legislative branch. "To substitute for the concept of the [City] [the court's] view of what might be the more salutary public policy would be for [the court] to legislate rather than to adjudge." *Lemasters v. Willman*, 281 S.W.2d 580, 590 (Mo. App. 1955). The court's function "is to declare the law as [the court] discover[s] it in the text furnished us by the [City] and when we have done so our authority ends." *Id*. "Courts determine questions of power, not policy." *Bader Realty & Inv. Co. v. St. Louis Housing Auth.*, 217 S.W.2d 489, 493 (Mo. banc 1949). It was within the City's discretion alone to decide when and how they

30

desire to meet and confer to collectively bargain with their employees, and it was not for the circuit court to set standards or policies regulating the City's authority to collectively bargain with its employees.

Article I, section 29 merely serves to protect an employees' right to bargain collectively and does not purport to require any specific procedures within which to conduct collective bargaining activities by either employees or employers. "If people want to change the constitution, the means are available to do so." *Independence*, 223 S.W.3d at 137. But, it is not for the courts to change the constitution. In the absence of wording in the Constitution that limit the City's discretion as to how collective bargaining is to be conducted, the courts are without authority to establish standards for bargaining unit constructs, election processes, and the appropriate subjects for bargaining.[17] The determination of such standards is left to the discretion of the legislative body, which in this case is the Board of Alderman of the City of Grandview. On the current record, and in light of the arguments made by the Fraternal Order of Police, the City's ordinance does not "'clearly and undoubtedly'" contravene article I, section 29 of the Missouri Constitution by: (1) summarily declaring that police sergeants are supervisory employees and are prohibited from being in the same bargaining unit as police officer; (2) failing to provide a fair and impartial forum for full and fair consideration and resolution of conflicts; (3) prohibiting sergeants and police officers from being represented by the same organization in separate bargaining units; (4) summarily prohibiting collective bargaining representatives employed by the City from receiving pay from the City for time spent preparing for, and

---

[17]Even if this court were to agree that the circuit court's construct of the framework for collective bargaining was superior to that of the City's, it is nonetheless our task to allow the City to set its own policy. Policies need flexibility to change with experience and circumstances. Policies set by constitutional mandate lack flexibility to meet evolving circumstances, even when it involves a matter of agreement between the parties.

31

participating in, collective bargaining; (5) summarily limiting to a maximum of one year the

duration of economic provisions of any labor agreement reached in collective bargaining; (6)

retaining the right to require the modification of the economic terms of any labor agreement in

the event of a budget shortfall; and (7) retaining the ability to modify the terms and conditions of

employment for employees in the bargaining unit in the event a collective bargaining

representative is decertified.  Enactment of these provisions of the ordinance is a valid exercise

of the City's legislative authority.[18]

### Conclusion

We, therefore, reverse the circuit court's judgment granting summary judgment in favor

of the Fraternal Order of Police in regard to the circuit court's determination about the

constitutionality of the City of Grandview's ordinance and remand to the circuit court with

instructions to enter summary judgment in favor of the City.  We, however, make no

determination about the constitutionality of the provision of the ordinance requiring that a

collective bargaining representative receive more than 50 percent of votes of all eligible voters.

We also reverse the circuit court's determination that, as a matter of law, an election was not

necessary in this case and that the City must immediately recognize the Fraternal Order of Police

---

[18]The ordinance also does not violate article I, section 2 (equal protection) and article I, section 10 (due process) of the Missouri Constitution.  The police officers, sergeants, and civilian members have not been denied their right to collectively bargain.  The equal protection and due process clauses do not give the police officers, sergeants, and civilian members the constitutional right to determine the framework under which they may collectively bargain.  Determination of the collective bargaining framework is a decision for the appropriate legislative body and in this case that is the Board of Alderman.  As long as the framework provides a reasonable means for the employees to exercise their right to bargain collectively and does not curtail the exercise of a fundamental right, they have not been deprived of their constitutional rights to equal protection and due process.  Article I, section 29 gives these the employees "the right to organize and to bargain collectively through representatives of their own choosing."  As previously discussed, the City's ordinance did not infringe upon this right in any way.

as the exclusive bargaining representative of the proposed bargaining unit of police officers and sergeants.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.